Fenner, Henderson & Fenner et als. vs. Succession.

## No. 12,299.

FENNER, HENDERSON & FENNER AND FARRAR, JONAS & KRUTT-SCHNITT VS. SUCCESSION OF D. C. McCAN ET AL.

This suit was to recover on a *quantum meruit* for professional services.

The guardian who was sued for the value of the services had authority to sue; it follows that whilst present, in point of view of the law, she could be made a party defendant.

The provisions of the will could be defended and the professional services for the defence charged against the estates of those by whom they had been made.

The heirs, even after they have been placed in possession (under a decree not shown final) may be impleaded for a succession debt. They received the property *cum onere.*

The executor was not condemned personally to pay costs and therefore the judgment pleaded as *res judicata* did not have the effect of the thing adjudged.

The commission that an executor may receive is not such a pecuniary interest as will, on the ground of interest, render him personally responsible for the fee of counsel employed to defend the will under which he received his letters of administration.

The value of the professional services considered and the amount taxed to the succession.

APPEAL from the Civil District Court for the Parish of Orleans. King, J.

*Percy Roberts* for Plaintiffs, Appellees.

*E. Howard McCaleb* for Mrs. Mary G. T. Stempel, Guardian, Defendant, Appellant:

I.

This suit is brought by plaintiffs to recover for professional services rendered in the succession of D. C. and H. C. McCan. 48 An. 145.

II.

The court *a qua* had no jurisdiction over a New York guardian to makes the estates of her wards responsible for the attorney's fees claimed after she was authorized to remove the property out of this State. The authority of a foreign guardian over the estates of her wards is strictly territorial and does not extend beyond the State of her appointment. Am. and Eng. Ency. of Law, Vol. 9, p. 123; Bradf. (N. Y.) 334; 3 Redf. (N. Y.) 249.

A judgment against minors is not valid when the judge has no juris-
diction. C. P. 93. A curator *ad hoc* should have been
appointed. C. P. 116.

### III.

Professional services rendered in attempting to sustain wills contain-
ing substitutions and *fidei commissa* in violation of a prohibi-
tory law can not be charged against the estates of minors. R. C.
C., Arts. 1520, 11, 12.

### IV.

After heirs have been sent into possession, by final decrees of a
competent court, the successions are terminated and can not be
impleaded. 30 An. 128; 25 An. 56, 220; 28 An. 446; 29 An.
838; 33 An. 830; 43 An. 1133.

### V.

The judgment condemning Harry H. Hall, the trustee under the
wills, to pay costs, has the authority of the thing adjudged
against plaintiff's demand. 5 La. 107; 6 An. 129; Redfield on
Wills, Vol. 1, 495; 1 McCarter, 135; 45 An. 89.

### VI.

Attorneys can not recover remuneration for services from those who
did not employ them. 5 An. 481; 27 An. 411.

### VII.

Legatees, testamentary executors, administrators or trustees having
a direct pecuniary interest in the maintenance of a will, must
pay their own counsel fees, and can not shoulder the charge on
the estate or the heirs. 8 An. 51; 13 An. 364; 28 An. 183; 11
Martin, 327.

### VIII.

Harry H. Hall, the trustee, under the wills of the deceased, being
pecuniarily interested in maintaining the trusts, and having
charged commissions as trustee, is personally liable to the plain-
tiffs and not the minor heirs, represented by their guardian. 13
An. 590; 7 Ohio St. Rep. 143; 2 Watts (Pa.) 232; 7 Watts
(Pa.) 170; 3 Watts & Serg. 441; 13 Pa. St. 569.

## IX.

The only question propounded for determination in the succession
of McCan was whether the decision in the succession of Strauss
violated the express provision of the Civil Code prohibiting
substitutions and *fidei commissa*, and the established jurispru-
dence of the State construing this prohibition.

## X.

Services rendered by counsel in succession matters under the eye
of the court must be taxed by the court itself, regardless of the
opinions of attorneys. 3 An. 518; 4 An. 578; 8 An. 66.

---

Argued and submitted March 5, 1897.
Opinion handed down March 15, 1897.
Rehearing refused April 12, 1897.

---

The opinion of the court was delivered by

BREAUX, J. Plaintiffs brought this suit upon a *quantum meruit*,
for their fees for services rendered in defending the wills of the late
David C. McCan and his wife, Mrs. Hester C. McCan.

The two wills left by them were duplicate of each other. In mak-
ing these wills, the testators copied the wills in the Strauss case
(Succession of Strauss, 38 An. 55).

These wills were probated and ordered executed. Harry H. Hall
was appointed as sole testamentary executor, with seizin of the
property. He administered the estate about two years.

Mrs. Stempel, mother of the grandchildren of Mr. and Mrs.
McCan, a resident of the State of New York, was appointed guardian
of her children.

Proceedings were instituted by her in matter of the succession of
Charles P. McCan, her first husband, to have herself recognized by
the Louisiana courts as the guardian of her minor children under the
law of her domicile, New York.

She was recognized and procured an order sending her into pos-
session of their property.

Her application was granted under the provisions of Articles 363
and 364 of the Revised Civil Code.

Subsequently, she instituted suit to set aside, annul and rescind

the testament of Hester C. McCan, widow of David C. McCan, and to cancel the probate of the testament on the ground that it contained dispositions reprobated by law, prohibited substitutions, *fidei commissa* and impossible conditions.

The executor considering it a matter of duty to defend the will against the attack of the guardian, employed counsel to represent him.   Their services were rendered in this court and in the District Court for the parish of Orleans.

This court (while recognizing that it is preferable always for courts to yield to precedent, and to maintain, as far as possible, uniformity in jurisprudence), entertaining a decidedly different view of principle from that announced in the cited case, *ubi supra*, overruled the prior decision, and decreed that the provision keeping the estate from the legal heirs, must yield to the law; that under our Code the administration of the executor must end, whenever legally required by the heirs.

The executor, in compliance with the decree of the court, turned over the entire estate, amounting to about one million and a half dollars, to the guardian.   Plaintiffs immediately after brought the present action for their services.

Counsel for defendant, before entering upon the argument of the issues raised by the exception and answer, controverted the authority of the lower court to render a judgment condemning a foreign guardian to pay to the plaintiff the sum claimed out of the estate of her wards.

The other questions, raised by the exceptions and answer, were, that plaintiffs' petition discloses no cause of action, because the services sued for were rendered in the ineffectual attempt to sustain wills made in violation of a prohibitory law; because the heirs having been sent into possession by a final decree of a competent court, the succession was terminated and could not be impleaded, because the right of an attorney to remuneration depends on a contract or appointment, and he can not recover from one who did not employ him, and, lastly, because the amount claimed by plaintiffs is unreasonable, excessive, and entirely disproportionate to the services rendered.

From a judgment condemning the defendant to pay the amount claimed she applied for and obtained an appeal to this court.

We take up the first issue before us for our determination, the

authority, *vel non*, of the defendant to defend a suit brought against her wards to make them liable for a moneyed judgment.

Of course, the authority to sue is not questioned by the defendant, but her authority to be sued is denied by her.

It must be taken as true that, primarily, the rights and authority of guardians are circumscribed by the laws of the territory of their appointment. In conformity, however, with a settled principle of comity among the States of the Union, guardians are recognized and allowed to sue. Due recognition was given to her in this case, by an order of the District Court authorizing her to sue for and recover any property without the necessity of qualifying here as tutrix of the minors. Before this order was issued, proof had been made to the satisfaction of the court that the defendant here was a lawfully constituted guardian, appointed by the proper court, and had given bond at the court of her domicile in the amount required.

The guardian, in procuring her recognition, subjected herself to the form, manner, regulations and responsibilities provided by law in the matter of a tutorship. The rights of the tutor to sue necessarily implies the corresponding liability to be sued; an exception does not arise in case of a guardian, *quoad* his claim placed on the same footing as a tutor appointed here.

Otherwise, it would be giving a decided advantage to a guardian or tutor appointed under other laws than our own. " No nation," says Mr. Story, in his work on Conflict of Laws, p. 39, " will suffer the laws of another to interfere with her own to the injury of her citizens."

In our judgment, the demand of plaintiffs was not an independent demand, but one connected with and incidental to the claim presented by the defendant, which claim was subordinate to the right of creditors. "Succession is the transmission of the rights and obligations of the deceased to the heirs." C. C. 871. No reason suggests itself why the " obligations" provided by the Code should be, as relates to remedy, less binding upon foreign heirs than those within the limits of the State. One seeking a right as an heir must be held bound without regard to domicile, for the burden it imposes. He must take the benefit *cum onere*. In its broad sense, the maxim: *Qui sentit commodum sentire debet onus*, applies.

Under our law a home tutor sued, as in this case, would be held bound to defend the suit. It follows that the liability of a foreign guardian is not less.

The defendant urged upon this court that a curator' *ad hoc* should have been appointed and made a party to defend the suit. In our view such an appointment was not indispensable. Defendant, we think, by her pleadings came within the rule that all persons who are found within the limits of a government, whether their residence is permanent or temporary, are to be deemed subjects thereof. Story Conflict of Laws, p. 40. She was within the limit of the judicial authority of the State.

We will conclude upon this point by the statement that the suit was properly brought against the executor and the heir who had accepted the succession and who were in possession of the property of the succession.

Our attention is next directed to the issue; that the services sued for were rendered in the ineffectual attempt to sustain wills made in violation of a prohibitory law and the public policy of the State.

Even conceding for the moment that the will was as averred by the defendant and that the one by whom it was signed as testatrix sought to contravene the public policy of the State, it does not follow that the counsel who defended the will were parties to an act violating the law and contrary to public policy.

Counsel would be entitled to a fee, who, in good faith sought to maintain the provisions of a will annulled (despite the defence made) as in violation of law and the policy of the State.

But we can not overlook the fact that Mrs. McCan did not knowingly and intentionally violate any statute, and that, on the contrary, she had every reason to believe that she was, in making this will, acting entirely within the sanction of law.

Taking one thing with another, we think we are justified in the inference that an extreme position was advanced upon this point, in order to give greater force to the more reasonable proposition advanced, that an attorney can not recover from one who did not employ him.

Before taking up the issue; the authority *vel non* of the executor in matter of the employment of counsel, we deem proper to state that there was no objection raised, on the ground that two firms were employed. Our predecessors laid down a rule (Succession of Gayle, 37 An. 554), adverse to the employment of more than one counsel, entirely correct, as we think, in most cases.

But it appears, in this case, that the trial was expedited; that all

the parties concerned were anxious to facilitate an early adjudication of all questions involving the validity of the wills of Mr. and Mrs. McCan. In consequence it is claimed that the services were much more laborious and much more troublesome than they otherwise would have been.

Be this as it may, we propose to discuss the issue raised, of the absolute want of power in the executor to employ counsel to defend the wills, the validity of which was involved.

The executor is the mandatory of the deceased, his power is founded upon special confidence, he is bound to use every reasonable endeavor to comply with his wishes.

The duty, under the will, extends so far as to allow him discretion in the matter of employing counsel to carry out the trust confided to him as executor. The executor is the singled out friend who enjoys the confidence of the testator in the closing hours of his life. " Il est chargé d'assurer l'éxècution des derniéres volontés du défunt." Laurent, Sec. 361, Vol. XIV. " Dès que l'intérét des legataires est en cause l'éxecuteur a qualité pour agir." *Ib.*

The grandparents sought to secure during the minority of their grandchildren an administration of their own selection. The loss of their only son, the father of these children, and the second marriage of their daughter-in-law gave rise to great concern, even alarm, it is asserted on the part of the grandparents, for the future welfare of their grandchildren.

Having accepted the trust the executor could not consistently with his duty do otherwise than employ counsel and present the strongest possible defence against the attack of the mother and guardian of the children; against the validity of wills which had been duly probated. It became his imperative duty to do everything necessary to sustain the validity of the decree under which he held letters of executorship. It was not possible, without disregarding a plain duty, to deliver the large estates with which he had been entrusted by the owners for the purposes we have seen, without the least defence. It follows, the defence required, authorized the employment of counsel.

We pass to the next proposition argued, that the foreign guardian having been put in possession of the property of the successions, the courts here have no jurisdiction of a suit against her to recover a debt of the successions.

Suit was brought against the executor and against the heirs. We understand from the record that the guardian was authorized to enter into possession of and remove from this State all the movable property. We do not understand that these estates have been fully administered and liquidated in such a way as to preclude creditors from recovering amounts due them. There was no final account filed, nor have we found of record evidence that the executor was discharged. Leonard vs. Smith, 28 An. 810.

Heirs in possession of succession property may be sued. Soye vs. Price, 30 An. 93. While it may be that practically the executor was discharged under the authority of the decisions just cited, in our view they, the executor and the guardian, were proper parties defendants.

This brings us to defendant's plea of *res judicata.* This plea is based upon the ground alleged that the executor personally, and not as executor, was condemned to pay costs in the case in which the services of the plaintiff were rendered and that the executor having complied with the judgment it had the effect of putting an end to the plaintiff's claim.

The executor was not personally condemned to pay the costs. The execution of the judgment, by putting the heirs in possession, does not operate as *res judicata.* The plaintiffs are the creditors of the succession and are not bound by the action of the executor.

The defendant, in the next place, insists that the professional services rendered at the instance of the executor in defending the will *is* not a legitimate charge against the estate. The executor would have, if this be the correct view, personally to pay counsel for services in defending the provisions of a will. Although the will of the testator should be obeyed, the executor, who is the personal mandatory of the deceased, would be, save at his own expense, without the power to employ counsel.

Our examination and study of the issues have not brought us to that conclusion. The defendant, in support of her contention upon this point, cites three decisions wherein it was held that an attorney can not recover from one who did not employ him, however valuable may be the result of his services to such person.

In the first case cited, Roselius vs. Delachaise (5 An. 481), the plaintiff who claimed for services rendered had not been employed by the defendant from whom he sought to collect a fee.

In the second cited case, Wailes & Matthews vs. Succession of Brown, 27 An. 411, it was decided that an heir is without authority to bind the succession; that he alone should bear the expense of counsel employed by him, and not the succession of which he is one the heirs.

In the third case cited, Cooley and Lacoste vs. Cecile, 8 An. 51, the legatees were in possession of the property; suit was brought against them personally and not against the succession from which they inherited. These legatee were not charged with the execution of the testament assailed. Counsel sought to hold legatees responsible for their fee, by whom they had not been employed, on the ground that their services had enured to the benefit of all the legatees, and that the succession was responsible. The court did not sustain the claim. It was a matter personal to the legatees by whom counsel had been employed. Were it otherwise, every legatee might claim the right to defend title to property inherited, and at the expense of the succession, long after the succession had been closed.

Here the executor stood in the position of an agent vested with some discretion in carrying out the will. He derived his power from the appointment. It had been confirmed by a judgment of the court probating the will. It happened that the guardian of the only heirs sought to have it annulled, and that the executor alone was in a position to defend the provisions of a testament solemnly made, containing the last wishes of the decedent. The employment of counsel was proper, and established the relation between counsel and the succession of client and attorney.

The next propositions urged by the defendant are, in substance: That the executor had a personal interest, and, secondly, that the estate derived no benefit from the services of plaintiffs.

In support of her first contention, relating to alleged personal interest, the defendant cites several decisions of this State and of other States. The former (under the laws of this State), have uniformly held, as we appreciate them, that an administrator or executor, who has a personal interest to defend, or who has committed acts of mal-administration, can not have his interest protected or his illegal acts defended at the expense of the succession he represents.

No such issue is presented in this case. The commissions allowed are in compensation for services as administrator or executor, and

are not treated in any of the decisions that we have read upon the subject as a "personal interest" of the officer of the court through whose agency a succession is settled.

The complaint of the defendant, that the estate was not benefited by the services, was not a controlling issue. The services may not have resulted to the benefit of the estate in a material point of view, and yet, owing to the will of the grandparents, may be due by their successions. It was their last declaration in will form, which rendered necessary the employment of counsel. It binds their heirs.

That the amount claimed by plaintiffs is unreasonable, excessive and disproportionate to the services rendered, is the last defence urged by the appellant in opposition to plaintiffs' demand.

The plaintiffs were employed in two suits brought by the guardian to annul the wills; one of these suits was brought against the succession of David C. McCan and the other against the succession of Hester McCan. The case in the two successions involved large amounts. The questions involved were intricate. The counsel employed offered every guarantee which is required of the profession; independence, devotion to duty, industry and a thorough knowledge of the law.

They were opposed by a number of lawyers equally as able and indefatigable in the interest of their clients. The case was thoroughly argued orally and in briefs.

In other words the fee claimed possesses every element of value. First, position and eminence of counsel at the bar; second, importance of the question involved; third, responsibility assumed by counsel; fourth, extent and character of labor performed; except one which we have purposely omitted from this foregoing enumeration, i. e., the pecuniary interest involved. It was not as large as we infer it was thought by the worthy counsel who testified as expert before the District Court. The question was: Who should administer the estate, whether the foreign guardian or the executor as trustee? It was of importance, it is true, to carry out the wills of the grandparents; that of itself invested the issues with some magnitude and gave value to the services, not as great, however, as if the title to the property had been involved.

There was no question of personal interest in the sense of title to property.

Considering the question from this point of view, we think the

judgment should be amended and the amount of the fee reduced to ten thousand ($10,000) dollars, for all services claimed for defending the will of D. C. McCan and the will of Mrs. Hester C. McCan.

It is therefore ordered, adjudged and decreed that the amount of the judgment appealed from be and the same is reduced from twenty-five thousand dollars to ten thousand dollars; as amended the judgment is affirmed, at appellee's costs.

### DISSENTING OPINION.

WATKINS, J. The plaintiffs, Fenner, Henderson & Fenner, and Farrar, Jonas & Kruttschnitt, two firms of attorneys at law, of the city of New Orleans, instituted this suit for the recovery of the sum of twenty-five thousand dollars, as the amount due them on a *quantum meruit*, for professional services rendered for the succession of the defendant, in a certain litigation involving the validity of the will of the decedent, under which the grandchildren were testamentary heirs, being at the same time the legal and forced heirs of the testatrix, and minors represented by a guardian appointed under the laws of New York.

The testament left by the deceased was in the olographic form, and her large and valuable properties and assets, of the aggregate value of one and a half millions of dollars, were bequeathed thereby to the aforesaid grandchildren, equally and in indivision. It made no special bequests of any kind. Of that testament, Harry H. Hall was appointed co-executor with David C. McCan, the husband of the testatrix; and the former became the sole executor, by reason of the fact that the latter died before the testatrix, and the rights of the testamentary heirs *thereby became absolute*, as, by the death of D. C. McCan, his right as universal legatee lapsed.

The will contained the provision that, during the minority of the testatrix's grandchildren, the money, the property and values given them conditionally be administered by his friend, Harry H. Hall; and he was directed to invest said moneys, in good securities or properties, and to apply to their education and support such a part thereof as may be necessary.

The will contained the following provision, viz.:

" I give all I may die possessed of to my grandchildren    *    *    * In case either of them die before attaining the age of majority, then the part or portion given as above conditioned to accrue to the sur-

vivors, likewise conditioned on such survivors attaining the age of majority; the true intent being to make my grandchildren my universal legatees, *upon condition that they reach majority*.

The will was duly probated, the executor qualified, and the administration of the estate began.

Some years afterward Mary Tobin Stempel, the mother and guardian of the minors, being advised that the quoted provisions of the will were obnoxious to our law as a prohibited substitution, and *fidei commissum* which rendered same absolutely null, instituted suit against the executor and prayed for a decree annulling the same, and decreeing the plaintiff entitled to immediate possession of the property of the deceased ancestrix, as the direct representative of the legal and forced heirs—terminating the trust of Harry H. Hall, and his administration as executor.

For full particulars and details of the pleadings and judgment in that case, I refer to our reports. Succession of McCan, 48 An. 145.

The executor retained the services of the plaintiffs, who undertook the defence of that suit; and also of one other of same import, relating to the succession of D. C. McCan, but which cuts no figure in this case, as it was a companion of the one first adverted to, and never came to trial. In my view, and I think that it can not be questioned—that litigation involved but a single question of law, and that was the *fidei* commissary character of the provision I have quoted. *Vide supra.*

Roundly and fairly stated, the question was whether the *administration* of the property of the testatrix, by a person designated in the will, during the minority of the grandchildren, was not the creation of a trust which is reprobated in our law; and that contention being sustained, that the administration should terminate, and the possession of the heirs be resumed.

This being conceded, it is apparent that the *sole* purpose of the suit was to rid the estate of this trust, and put the legal heirs in possession—that, and that alone.

Consequently, the value involved was nothing but the *cost* of Hall's administration, and not the properties of the estate. For it did not owe a dollar to any one, and there was no claimant adverse to the heirs, except H. H. Hall as *administrator of the revenues* of the estate.

The suit finally terminated in a judgment of this court annulling

the will and decreeing the grandchildren entitled to immediate *possession* of the property and estate of their grandmother as her legal and forced heirs—the theory of the opinion of the court being that the will contained a *fidei commissum.*

It is for services the plaintiff rendered to the executor—in his capacity above explained—adversely to the contention and demand of the legal heirs, that they make claim in' this suit for twenty-five thousand dollars as compensation. That demand is not predicated upon a contract, but upon a *quantum meruit;* and it is from that standpoint that this court is called upon to appraise and value those services, coming as they did within its cognizance and under its immediate observation.

There is no question in my mind as to it having been the legal right as well as the manifest duty of the executor, circumstanced as he was, to defend the suit and uphold the validity of the will, and for that purpose to employ counsel to assist him therin, notwithstanding he was and is a capable lawyer and a leading member of the legal profession.

He had before him as exemplars the case of Succession of Macias, 31 An. 127, and the case of 'Succession of Straus, 38 An. 55.

But this court having found and decided that those cases were not a proper foundation for the will of the testatrix and decreed it to be a nullity, the question arises as to what extent the succession and legal heirs were *actually benefited* by plaintiff's professional services. From the standpoint of the executor there is no doubt that the succession and *testamentary* heirs were to have been *prospectively* benefited by the maintenance of the will through the instrumentality of his attorney's assistance; but, having lost the suit and the claims of the *testamentary* heirs having been defeated by the annulment of the will, the question is as to the *obligation which was imposed upon the succession thereby,* which the legal heirs were necessitated to pay, as a condition precedent to their taking possession thereof.

There is not any question—indeed, there could not be—of the ability, energy, integrity and assiduity of the plaintiffs as lawyers, or with regard to the value of their services, taken as an abstract proposition relating to the executor in his relations to the estate, but, in my opinion, their value taken in respect to the resulting benefit to the legal heirs is quite another thing. If I am correct in the assumption that there was nothing involved in the original liti-

gation except the administration of the succession and the investment of its revenues during the minority of the testamentary heirs, the *possible* benefits thereof to the executor and to Mr. Hall personally could not have amounted to more than fifty thousand dollars in round figures, the proof disclosing that he has already received from the succession over thirty thousand dollars.

Taking that amount as the basis of my calculation, in my opinion ten per cent. on that sum—that is, five thousaad dollars—would have been a reasonable compensation for the services of counsel if they had *successfully* resisted the suit of the legal heirs to annul the will, but having been unsuccessful, the judgment of this court awards them just twice that sum.

In Succession of Heffner, *ante*, page 407, we had under consideration a question quite similar to the one under investigation in this case, with the important exception that in the Heffner will there were several special legatees named, and among the number the executor was mentioned as a legatee for about one-third of the estate, which aggregated about fifteen thousand dollars or twenty thousand dollars. In the suit for the annulment of the will the various legatees were made parties, and they united with the executor in resisting the suit of the legal heirs to annul the will and likewise the special legacies. The executor and the legatees united in the employment of Messrs. Wise & Herndon, attorneys at law, of the city of Shreveport, to represent their mutual interests in the suit, and they did so represent same in the District Court and in this court, and unsuccessfully, the will having been annulled.

Upon the final account when filed the fee of the attorneys was placed at the sum of five hundred dollars, that is about two and one-half per cent. upon the total value of the estate, or ten per cent. upon the total interest of the executor. The District Judge rejected this item on the account entirely, but upon appeal to this court the same was restored to the extent of allowing to the attorneys the sum of three hundred dollars only—a little more than one-half of the amount originally claimed.

There can be no question of the ability, integrity or assiduity of the attorneys employed. None of the exact applicability of that case to the instant one; except as to the fact of the special legatees having been joined with the executor, thus making it a stronger case for the allowance of fees.

And, pursuing the theory announced in that case, it seems to me that twenty-five hundred dollars for the services of the plaintiffs is the full *quantum meruit* value of them; and that only for that amount did the succession incur any legal obligation. And in view of that opinion the legal heirs ought not to be called upon to reimburse the executor any further sum.

For these reasons, I respectfully dissent from the opinion of the majority of the court.