Succession of Trouilly.

# No. 12,783.

## SUCCESSION OF WIDOW CHARLES TROUILLY.

### SYLLABUS.

1. Where an appeal is perfected, and the jurisdiction of this court has attached, it cannot be withdrawn by the appellant, without the consent of all the appellees, and of the court, nor will the court permit the withdrawal of a brief, properly filed, in support of such appeal, without the consent of all parties interested.

2. Where a document, purporting to be an answer to an appeal, and a brief, filed in support thereof, do not deal with matters acted upon by the court *a qua*, but undertake to inject into the case, new issues of fact, which can not be met in this court by the appellants, and which this court can neither deal with as original matter, nor as matter included in the pending appeal, such document and brief may be ordered withdrawn from the files.

3. An opponent, who, in a motion for a new trial, "acquiesces" in the judgment rendered, save as to certain particulars, is bound by such judicial admission and acquiescence, and will be heard in this court, only with respect to the particulars not included therein.

4. The written acknowledgment of the decedent made shortly before her death, of a debt due to a particular opponent, is admissible in evidence as against the succession and its creditors, and may be supported by the commercial books of the decedent and by oral evidence.

5. As between appellees, the judgment appealed from must remain undisturbed in this court.

6. The "delivery" of movable property, sold by an auctioneer in a succession proceeding, and the "collection" of the proceeds of the sale, is not "expert" work, for which the auctioneer is entitled to make a charge in excess of the commission allowed him by law, for making the sale.

7. Nor, where the property consists of the contents of a store, which is kept open, at the expense of the succession, and in which persons familiar with the stock are employed and paid up to the date of the sale, will an extra allowance be made to the auctioneer for "lotting" the goods.

8. Where the head of the community dies, leaving an estate consisting of a stock of goods in a going store, and his widow takes possession, as widow in community and usufructuary, and continues the business for a number of years, and the value of the community property, at the date of the death of the master, is shown, and it does not appear that there were any debts at that time, the children of the marriage are creditors of the succession of the surviving parent for the amounts inherited by them from their father.

9. An executrix has no capacity to appeal on account of creditors, whose claims have been opposed and rejected, and if such creditors fail to appeal, the judgment will not be disturbed for their benefit, by this court, at the instance of the executrix.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

Succession of Trouilly.

Rice & Montgomery and A. E. Billings for Joint Executors, Appellants, and Mrs. Joseph Gotteland, Opponent and Appellee.

Henry Chiapella for Frank Zengel, Public Administrator and Dative Testamentary Executor of the Succession of late Mrs. Charlotte Raskin, Appellant; Hughes & Favrot for H. Genestal & Delzons, Opponents and Appellants; E. Evariste Moise for Edward Curtis, Opponent and Appellant.

Henry Renshaw for Henry Chiapella and for Frank Zengel, Public Administrator, Dative Testamentary Executor of the Succession of Mrs. Charlotte Raskin, Opponent and Appellant.

Buck, Walshe & Buck for Germania Ins. Co., Opponent and Appellee.

The opinion of the court was delivered by

MONROE, J. Widow Charles Trouilly died March 8th, 1897, leaving, as sole heirs, her two daughters, Mrs. (widow) Scheideker and Jeanne Trouilly, wife of Joseph Gotteland. She left, also, an olographic will, whereby she appointed Mrs. Scheideker her executrix, and left the disposable portion of her estate to her. Mrs. Scheideker qualified as executrix, subsequently married Xavier Raskin, and, thereafter, filed her account as executrix. Several parties interested opposed this account and, among others, Mr. and Mrs. Gotteland, and Genestal & Delzons, creditors, residing in France. There was judgment in the District Court ordering the account to be amended in some respects, and, as thus amended, approved. From this judgment Mrs. Raskin appealed, suspensively (by separate motions), as executrix and individually; Genestal & Delzons appealed, suspensively, and E. Curtis appealed, devolutively. No other appeals were taken. The transcript was filed May 2nd, 1898. Upon October 8th, 1898, Mrs. Raskin died, and, upon November 9th, 1898, the case was fixed for trial in this court, but was not tried. Thereafter, Mr. and Mrs. Gotteland were appointed joint dative testamentary executors of Widow Charles Trouilly, and Frank Zengel, public administrator, was appointed dative testamentary executor of Mrs. Raskin, and they were made parties to the pending appeal in those capacities, respectively. Following this, in March, 1899, Mr. and Mrs. Gotteland, in

their said capacities of joint executors, filed in this court what purports to be an answer to the "appeals herein, by Charlotte Trouilly, wife of Xavier Raskin, testamentary executrix, and personally, and by others," which sets up certain matters in regard to the handling of the funds and property of the succession, of which they allege they have become informed since their appointment as joint executors, and, concerning which, there was, consequently, no hearing in the court *a qua,* and the transcript before us is silent.

### MOTION TO DISALLOW AND WITHDRAW, ETC.

In this condition of affairs, upon November 7th, 1899, the case being called for argument, the counsel who formerly represented Mrs. Raskin, both individually and as executrix, appearing for Frank Zengel, her dative testamentary executor, and suggesting that Xavier Raskin, her universal legatee, on the one part, and Mrs. Gotteland and her husband, upon the other, had adjusted, settled, and compromised all matters in controversy between them, and that it is therefore proper to withdraw the appeal taken by Mrs. Raskin, individually, from the judgment of the District Court in favor of Mrs. Gotteland, sustaining her opposition to the account, moved the court "that said suspensive appeal, taken by said late Mrs. Charlotte Raskin, *nee* Trouilly, and now prosecuted by her said succession, represented by mover, as aforesaid, be disallowed, and withdrawn, as well as the answer to said appeal, filed in this court by said Mrs. Jeanne Gotteland, *nee* Trouilly, and Joseph Gotteland, her husband, conjointly, dative testamentary executors of the succession of Widow Charles Trouilly, and that the briefs in support of said appeals and of said answer to the appeal, filed by said parties, respectively, be withdrawn from the files of the said court."

This motion was heard contradictorily with the counsel representing Mr. and Mrs. Gotteland, joint executors, and individually, who, in behalf of said executors, object to the withdrawal of the appeal and say that the compromise suggested relates solely to personal matters between Xavier Raskin, universal legatee of his deceased wife, and Joseph Gotteland and his wife, in their individual capacities.

Aside from this objection, and whether we consider that Mrs. Raskin, executrix, was an appellee *quoad* the appeal of Mrs. Raskin, individually, and that Mr. and Mrs. Gotteland, succeeding to the

executorship, became,*quoad* said appeal, appellees, officially, as contra-distinguished from their position as appellees in their individual capacities; or, whether we do not so consider, nevertheless, there are other persons who are appellees, *quoad* such appeal, and there is no suggestion that they have consented that it shall be withdrawn; under these circumstances, the motion, in so far as it relates to the appeal, should be denied.

C. P., 594, 595, 901; Mdme. de St. Romes vs. Levee Steam Cotton Press, 31 Ann., 228; Wolf vs. Poirier, 19th Ann., 103; Succession of Andrews, 16th Ann., 340.

And, for much the same reason, it should be denied as to the brief filed in support of said appeal, which was properly filed and deals with matters in which others besides Mrs. Raskin and her universal legatee are concerned.

In so far, however, as the motion relates to the document purporting to be an answer to the appeals by Mrs. Raskin, as executrix, and individually, and others, and to the brief, filed March 28th, 1899, in support of said document, we think the motion should prevail, for the reasons, that:

*Quoad* the appeal taken by Mrs. Raskin, as executrix, Mr. and Mrs. Gotteland, as her successors in office, succeed her as appellant, and have no standing to answer their own appeal.

*Quoad* the appeal taken by Mrs. Raskin, individually, whilst Mr. and Mrs. Gotteland, both as joint executors and individually, are appellees, and might have answered if they had done so conformably to law, the document which they present as an answer, seeks to inject into the case new issues of fact, which were not presented to, or litigated in, the lower court, and which we can neither deal with as original matter nor review as upon appeal.

Wooten vs. LeBlanc, 32nd Ann., 695; Tanneret vs. Merchants' Ins. Co., 32nd Ann., 667.

Beyond this, the document was not filed within three days before the case was first fixed for argument in this court, and, therefore, comes too late.

C. P., 890; Converse vs. Steamer Lucy Robinson, 18th Ann., 434.

Not being an answer to the appeals in any legitimate, or legal sense, and not having been filed within the time required for filing an answer, neither the document, nor the brief in support of it, is properly in the record, and they should be withdrawn. It will be under-

stood, however, that we place no construction upon the compromise referred to in the motion, nor do we prejudge any of the matters set up in the document called an answer to the appeals, since they are not before us for present action of that character.

### OPPOSITION OF GENESTAL AND DELZONS.

Opponents, who reside in France, asked, in the opposition originally filed by them, to be recognized as ordinary creditors in the sum of 10,114.74 francs, with interest, the equivalent of which amount is stated to be, in American money, $1,973.63; and they also asked to be paid, *pro rata* with other creditors, from the funds of the estate here in Louisiana. They were recognized in the account as ordinary creditors for 10,050 francs, or $1,951.84, but were relegated to some property in which the decedent is said to have had an interest, in France, for the payment of their claim. The judge *a quo* found the amount due them to be as stated in the account, and ordered that they be paid as prayed by them. They filed a motion for a new trial, in which they made the following statement, to-wit:

"That, while this succession purports to be the succession of Mrs. Charles Trouilly, it is, in fact, and in law, a settlement of the community of acquets and gains, between Charles Trouilly and his wife, and the judgment rendered herein should be so amended as to pay your mover before the claim of any of the heirs has been paid, your mover's claim being against the community. *That in all other respects, your mover acquiesces in the said judgment.*"

This acquiescence, by judicial admission, estops the opponents from contesting the judgment appealed from, except as to the matter reserved by them, to-wit, their claim that they are creditors of the community which existed between the decedent and her pre-deceased husband, and should be paid by preference, etc., and the claim thus reserved is entirely inconsistent with that set up in their opposition; in which they say:—"That they are creditors of the decedent, Mrs. Charles Trouilly," and ask to be recognized as such. Moreover, the husband of the decedent died in 1884, and the account ran on with the surviving widow, up to the time of her death, in March, 1897, so that, if the opponents rely upon the position taken in the motion for new trial, the plea of prescription, set up against them, would prevail. In their brief filed in this court, however, opponents' counsel

fall back upon the position as originally taken in their opposition; hence the only point reserved in their appeal being unsound, and being abandoned, there is nothing left for them to be heard about in this court, except in defense of the judgment in so far as it is in their favor.

The counsel representing the dative testamentary executor of Mrs. Raskin argues, in the brief on file, that the proof in support of the opponents' claim is insufficient. This is rather a peculiar position for them to assume, in view of the fact that the claim of the opponents is recognized, upon the account which we are now considering, which was filed as the account of Mrs. Raskin, executrix, sworn to by her, and was, doubtless, prepared by the counsel themselves.

This recognition, standing alone, might not be sufficient, as against the other creditors, but it ought to be good as against the person who makes it; and, as far as we have been able to discover, there is no other appellant who raises the question. Upon the other hand, as between the appellees, the judgment must remain undisturbed (*Hottinger vs. Hottinger,* 49th Ann., 1465; *Johnson et als. vs. Barelli,* 20th Ann., 452). We may say, however, that we agree with the district judge, that the evidence offered was admissible, and was sufficient to establish the claim. That evidence consisted, in part, of entries upon the books of the decedent during a series of years preceding, and up to the date of her death; a letter addressed to the opponents and signed by the decedent only a few months before her death, in which she admits the correctness of the account (after pointing out an error of ten francs to the prejudice of the opponents), and encloses them a sight draft for 1,031.34 francs on account; and the acknowledgment and affidavit of the executrix, who, as the daughter and one of the heirs and creditors of the decedent, was in a position to know that the latter had been dealing with the opponents for many years, and was in their debt. Johnson vs. His Creditors, 16th Ann., 176; Canal & Banking Co. vs. Leeds & Co., Ltd., 49th Ann., 123.

## THE CLAIM OF E. CURTIS.

Mr. Curtis was the auctioneer, employed to sell the stock of goods held by the decedent at the time of her death. His claim was recognized upon the account as follows, to-wit:

Auctioneer's commission on sales, 5 per cent.............$219 46
Charity Hospital Tax, one-half of 1 per cent...............  21 94
Porters, for delivering, collection, lotting, etc............. 219 46
Times-Democrat, advertising auction sale.................  41 95
Picayune, advertising auction sale......................  10 50
New Orleans Bee, advertising auction sale...............  20 65

          Total ..............................................$536 96

The judge *a quo* approved all the items thus allowed, with the exception of the item of $219.46 for "Porters for delivery, collections, lotting, etc.," which was stricken off as unauthorized.

Act No. 104 of 1896 provides that "no auctioneer shall demand or receive a higher compensation for his services in sales of real estate, than * * * Upon all sales of movables, except stocks and bonds, the commission shall not be more than five per cent."

It is argued on behalf of the claimant, however, "that he was employed especially to do certain work, not incumbent on him as an auctioneer, which involved his expert knowledge and skill and that of employees in a particular line of business, with all the expenses attendent upon a full, fair, and just compliance with his duties as such expert," and it is said that the item in question represents his claim for services in that behalf. The item speaks very largely for itself. The "*delivery*" of goods sold by an auctioneer, and the "*collection*" of the amounts for which they were sold, is not "expert" work, but is plainly included in the work for which the five per cent. commission is paid. Whether in a particular case, the executor or administrator might, with the authority of the court, employ experts to prepare goods for sale, is a question which we do not find it necessary to decide in the case before us. The decedent died March 8, 1897; the goods were sold, in the store which she had occupied, in the last days of April of the same year. In the meanwhile, the store had been kept open by the executrix, or under her authority. She had the assistance of Mrs. Gotteland, and of Miss Labarre, the same saleslady who had previously been employed, and they both have been allowed compensation for services rendered up to the date of the sale. We can see no reason, therefore, why the executrix (or the representatives of the executrix, when the latter was incapacitated by sickness), with this assistance, should not have prepared and arranged the goods for the sale which was to take place, and we can not, under the

circumstances, recognize the necessity for the employment, by the auctioneer, of a porter to do what is called the expert work of "lotting the goods."

Beyond this, if it be true, and we do not dispute it, that "the expert lotting of goods is. what makes good results," the auctioneer, as such, whether he understands and attends to that branch of his business or not, certainly has an interest in having it well done, for the reason that he is paid a commission, and the larger the sale, the larger his compensation.

Again, the item which was disallowed by the judge *a quo* does not figure on the account as compensation for expert work by the auctioneer, but as an allowance for work done by a porter employed by him, and it is impossible, either from the item itself, or the evidence offered to sustain it, to determine what proportion of the amount is intended as compensation for *"lotting, etc.,"* and what proportion for "delivering" the goods and receiving, or "collecting" the amounts for which they were sold.

The testimony, tending to show that the charges, as made, are such as would be made by the auctioneer for making a sale for an individual, has no proper bearing upon the subject. It was probably because the charges ordinarily made, whether against individuals or otherwise, were regarded as being too high, that the law makers in this State took the matter in hand, so far as judicial sales are concerned, and regulated it. If the regulation is too stringent and the compensation allowed for such sales insufficient, the appeal for relief should be made to the law-making power, and not to the courts.

## THE APPEAL BY THE EXECUTRIX.

Mrs. Raskin, individually, has abandoned her appeal, but the appeal taken by her as executrix stands. The only argument which we find in its support, however, is that contained in the brief, filed on behalf of her dative executor, in which are discussed the claims of Genestal & Delzons, Mrs. Gotteland, the Notary Public and the Appraisers.

The matter of the claim of Genestal & Delzons has already been sufficiently considered.

Mrs. Jeanne Trouilly, wife of Joseph Gotteland, is one of the daughters of the decedent, issue of her marriage with Charles

Trouilly, who died, as has been before stated, in 1884. The evidence satisfies us, as it satisfied the judge *a quo,* that the matrimonial community, of which he was a member, was worth $45,000 at the time of his death. His widow took possession, as widow in community and usufructuary, having on imperfect usufruct, and, at her death, left assets of a value far below the amount of her deceased husband's interest in the community, which had been inherited by his two children. It seems probable, from the evidence in the record, and from the fact that she makes no claim in that behalf, that Mrs. Raskin, the other daughter, received, during the life of her mother, all that was due her from her father's succession. The evidence, however, fails to show that Mrs. Gotteland received any part of the amount due her and she was, accordingly, recognized by the judgment appealed from as an ordinary creditor of her mother's succession, on that account, in the sum of $11,250, and as a privileged creditor in the sum of $40 for services rendered the succession. As to the item of $40 it is sustained by proof, and seems not to have been seriously contested, the contest being waged against the larger claim. Concerning this latter, we are of the opinion that the judgment as rendered is correct. The property of the community, of which the widow and usufructuary took possession, consisted of a stock of goods which, it must be presumed, were consumed during the course of the thirteen years which elapsed before the death of the usufructuary, so that the claim of the heir of the deceased partner is for their value at the time that the usufruct began.

Succession of Blancand, 48th Ann., 579.

The items placed upon the account representing the notary's and appraiser's fees were rejected and reduced, respectively, because the evidence, as offered, failed to satisfy the judge of the lower court that they were within the law. Neither the notary nor the appraisers have appealed. We do not understand that the executrix has such an interest as entitles her to be heard in their behalf.

The administrator of a succession has no capacity to "appeal on behalf of parties whom he has placed on his account as creditors, and whose claims have been opposed and rejected by the court."

Succession of Pettis, 11 Ann., 177; Succession of Hartigan, 51 Ann., 126.

For these reasons, it is ordered, adjudged, and decreed that the motion herein filed in behalf of Frank Zengel, dative testamentary

executor of Mrs. Charlotte Trouilly, deceased wife of Xavier Raskin, be made the judgment of the court in so far as that Mr. and Mrs. Joseph Gotteland, joint dative testamentary executors, be directed to withdraw from the files of the court, the document purporting to be an answer to the appeals of "Mrs. Charlotte Trouilly, wife of Xavier Raskin, individually, and as executrix, and others," and also the brief, filed March 28, 1899, in support thereof, and, in all other respects, that said motion be denied, and the rights of all parties interested, with regard to the custody and administration of the funds of this succession, except in so far as the same may be adjudicated upon herein, and with regard to the compromise effected between Mr. and Mrs. Gotteland and Xavier Raskin, universal legatee, be, and the same are, hereby, reserved.

It is further ordered, adjudged and decreed that the judgment appealed from be affirmed at the cost of the appellants, respectively.