(36 South. 904.)

No. 14,770.

Succession of HENDERSON.

(March 28, 1904.)

EXECUTORS—CLAIMS AGAINST ESTATE—INSUR-
ANCE MONEY—WILL—SUCCESSION—APPEAL
BY EXECUTOR—INSOLVENT ESTATE.

1. The evidence preponderates in favor of the view that the policy of insurance under which the money in controversy was collected was made in such form as to give to the assured (testator) the right to dispose of the proceeds by testament, and, he having assumed to dispose of them in that way, his executor, at whose instance his will was ordered to be executed, cannot be heard to set up a claim thereto in opposition to the disposition so made.

2. The testator cannot dispose of his property to the prejudice of his creditors, or in such manner as to prefer one to the other.

3. If creditors of a succession, whose claims have been rejected, fail to appeal, the judgment appealed from will not be disturbed in this court at the instance of the executor, whose appeal does not bring up their cases for review.

4. Where, in an insolvent succession, the executor's account shows a specific sum for distribution, the amounts to be allowed to the distributees, respectively, must necessarily be fixed; and where, in the case of a judgment creditor, he is allowed an amount which includes interest up to the date of the filing of the account, and costs, he has no reason to complain.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

In the matter of the succession of E. Fenner Henderson. From the judgment in favor of Jules A. Gauche, opponent, the executor appeals. Modified.

Saunders & Gurley and Charles Payne Fenner, for appellant. McCloskey & Benedict, for appellee.

### Statement of the Case.

MONROE, J. It appears from the record that E. F. Henderson died upon the night of August 10, 1900, leaving an olographic will, dated June 1, 1900, which reads, in part, as follows:

"I leave $33,000 of life insurance (less loans), which will be the major part of my estate. I have, in addition, $15,000, life insurance, payable to my brother, Sam Henderson, Jr., as trustee. I leave a letter to him telling him how to use it and I want no one to interfere in its execution."

The testator then appoints his brother executor, and, his death and the probate of the will having taken place in the meanwhile, the appointment so made was confirmed by the court upon August 17, 1900. In February, 1902, an inventory was filed, which in June was followed by the executor's final account, showing cash on hand, $30,975.44; privileged debts, $5,119.75; ordinary debts, $50,198.49. Among the recognized ordinary debts is one in favor of Jules A. Gauche for $9,226.66, and one in favor of Sam Henderson, Jr., for $34,661.14, "as per annexed list," which list purports to give the names of certain creditors of the testator, and the amounts paid to them, the aggregate of which is charged to the succession as a debt due to Sam Henderson, Jr., by whom the payments were made. Jules A. Gauche opposes the account thus filed as follows: He alleges that he is a judgment creditor for $8,389.50, with interest upon different amounts from different dates, and he prays to be so recognized. He further alleges that the executor has failed to account for the $15,000 referred to in the will of the decedent, and he specially opposes various items recognized as privileged and as ordinary debts. There was judgment sustaining the opposition, in part, and ordering the executor to file another ac-

count, and to debit himself thereon with the proceeds of the $15,000 of life insurance mentioned, and with all other moneys received by him for the succession; recognizing as privileged some of the claims to which privileges are accorded by the executor; reducing the fees allowed the attorneys and the notary; rejecting the claim of the expert, and that of the executor for the expense of a trip to New York; directing that all other claims to which privileges are accorded, save those mentioned, and that of the executor for his commission, be placed on the new account, as ordinary debts; and ordering the executor to recast the list annexed to his account so as to show the persons paid by him, and the amounts so paid, "without interest"; the opposition with respect to the commission of the executor to be transferred to the new account. From the judgment so rendered, the executor, individually and officially, prosecutes this appeal, and the opponent answers, asking that he be allowed interest as prayed for in the opposition; but no creditor whose claim has been reduced or rejected has appealed, or has joined in or answered the appeal taken by the executor.

The following is a résumé of the case presented on the trial, to wit: Prior to 1895, or 1896 the testator and his mother, as ordinary partners, were engaged in business as insurance agents. In one of these years his brother, the executor, assisted in organizing a corporation known as Sam Henderson's Son & Co., Limited, of which the testator was made president, and which took over and continued the business theretofore conducted by the partnership. At the death of the testator, in August, 1900, the affairs of the corporation and his own affairs were found to be much embarrassed, but there was considerable insurance upon his life, and the executor, thinking, perhaps, that there would be enough to pay the debts, and being willing to bear some loss

in order to accomplish a satisfactory result, determined to settle the succession, and, with the consent of the stockholders, liquidate the affairs of the corporation, practically, out of court. Having, therefore, presented the will for probate, obtained an order for its execution, and qualified as executor, he collected, for account of the succession, exclusive of the $15,000 mentioned in the opposition, some $30,000, to which were added the collections made for account of the corporation; and he disbursed, without being authorized so to do, in paying debts due by the succession and corporation, the whole amount which thus came into his hands, as also a good deal of his own money. Finding eventually that he would be unable to settle the succession in the manner proposed, he decided to submit his gestion as executor to judicial investigation, and, in so doing, has charged himself with all moneys which can be said to have been received for account of the succession, save the $15,000 life insurance which is here made the subject of dispute; and he holds himself liable to the creditors for their respective proportions thereof, without regard to his unauthorized disbursements. As to the item in dispute, it will be observed that, in the paragraph which has been quoted from his last will, the testator mentions a letter of instruction which he leaves to the executor. In point of fact, he left two letters—the one, to which he must have referred, bearing the same date as the will (June 1, 1900), instructing the executor to pay the debts due by him to certain persons and banks, named or indicated; the other, dated upon the day preceding the night of his death (August 10, 1900), mentioning other creditors whom he desires to have paid, making some suggestions as to the settlement of his insurance business, and saying:

"I want mother to have the use of all my life monies as long as she lives, she, of course,

to see that my children have all that they need," etc.

There is nothing in either of the letters to indicate that the writer entertained any doubt as to his control over the money, concerning which the language of the will is:

"I have, in addition, $15,000, life insurance, payable to my brother, Sam Henderson, Jr., as trustee. I leave a letter to him telling him how to use it and I want no one to interfere in its execution,"

—Or to indicate that, in the opinion of the writer, the person to whom the letters were addressed, or any other person, had any rights which were to be considered in that connection.

The executor, however, asserts that the proceeds of the $15,000 of insurance mentioned do not belong to the succession, and he testifies that, although the will refers to those proceeds as being payable to "Sam Henderson, Jr., as trustee," the policy of insurance under which they became due and were collected was made payable to "Sam Henderson, Jr.," and that it was taken out to secure him for advances made for the benefit of the testator and his mother at the time of, or just previous to, the organization of the corporation Sam Henderson's Son & Co., Limited, to secure him against loss by reason of his having become surety on bonds given by that corporation to various companies for which it was agent; to secure the mother of the testator (also his mother) for money contributed by her either to the firm or to the corporation; and, finally, that the balance, if any, was to go to the wife and children of the testator. Upon the other hand, the executor also testifies that he does not remember ever to have seen the policy in question, which appears to have been actually taken out without his knowledge or co-operation, and to have remained always in the possession of the assured; and we understand his testimony as to its form and purpose to be predicated upon an agreement, arrived at about the time of the organization of the corporation, between himself and the assured, as to what the latter should thereafter do, and not upon any actual knowledge of what was thereafter actually done. The policy in question was not offered in evidence or produced, no other witness testified concerning it, and there is no other evidence as to its form or contents in the record, except a communication from an insurance company, filed, with the authority of the court, nunc pro tunc, after the trial, addressed to Sam Henderson, Jr., purporting to inclose its (the company's) checks in settlement of certain claims under policies on the life of E. F. Henderson; two of the checks being referred to as drawn in favor of "Sam Henderson, Jr., Executor," and one, for $13,594.44, as drawn, in favor of Sam Henderson, Jr. The executor does not testify that any money advanced by him, and with reference to which the policy in question is alleged to have been taken out, is still due, nor, though he has paid considerable sums in satisfaction of claims on bonds given by Sam Henderson's Son & Co., Limited, is it shown that the particular bonds so satisfied were in existence or were in contemplation when the policy was taken out. He testifies at one time that his and the testator's mother has received and expects none of the proceeds of the policy. At another time he charges those proceeds with $6,400 in her behalf, by way of showing that no part of them can, in any event, fall into the succession.

### Opinion.

The executor, according to his own testimony, never saw the policy of insurance, the proceeds of which the testator assumes to dispose of by his last will, and which he directs the executor to use for a specific purpose, in which the latter has no pecuniary interest. How, then, can he have any personal knowledge of its form or contents? Conceding the accuracy of his memory, after a lapse of seven or eight years, as to a

verbal understanding with the testator, how can he know that a policy which he has never seen was issued in accordance with that understanding, rather than, as stated in the last will—and, inferentially, in the last letter addressed to him—of the man by whom, and upon whose life, it was taken out, and who had it in his possession from the time of its issuance up to and at the moment when the will and the letter were written? Intelligent people, with the best intentions, readily misunderstand each other, and sometimes forget; and the thing as understood by the executor may have been totally different from that understood by the testator, or the executor may have forgotten what the understanding was. The questions of fact involved—i. e., whether the policy was made payable to "Sam Henderson, Jr., as trustee," or to "Sam Henderson, Jr."—and the conditions of the trust, if the creation of a trust was attempted, might readily have been determined by the production of the policy itself, or a copy, if the original was not obtainable; but neither have been produced, and this court is relegated for the solution of those questions to indirect evidence. The testator, it will be remembered, had for some years prior to the making of his will been engaged in the insurance business, as agent for life insurance companies, from which it is fair to assume that, although he may not have been familiar with the law of Louisiana concerning trust estates, he had at least common information upon the subject of the rights of the beneficiaries named in life insurance policies; and, if this assumption be well founded, it would seem improbable that he should have undertaken to dispose absolutely of the proceeds of a policy taken out by himself on his own life in the name and for the benefit of another person, more improbable that he should impose upon that person the obligation of carrying such purpose into effect, and most improbable that the person so selected should accept the trust.

To sustain the contention that these apparently improbable things have been done, we have only the testimony of the executor as to the contents of an instrument which he had never seen, and the communication from the insurance company to which we have referred, neither of which, in view of the fact that the document in question is in existence and has not been produced, can be accorded any probative effect.

Beyond the question of fact thus presented, there is a question of law which bears upon the attitude of the executor. It will hardly be denied that the first duty of an executor is to obey the directions of the will which he has undertaken to execute. There are differences of opinion as to the conditions under which, if at all, he is called on to defend the will, when contested, but, concerning both propositions this court has said:

"The executor is the mandatary of the deceased. His power is founded upon special confidence. He is bound to use every effort to comply with his wishes. * * * Having accepted the trust, the executor could not, consistently with his duty, do otherwise than employ counsel and present the strongest possible defense against the attack * * * upon the validity of the wills, which have been duly probated." Fenner, Henderson & Fenner v. Succession of McCan, 49 La. Ann. 600, 21 South. 768.

The executor in the instant case presented for probate, and obtained an unqualified order for the execution of, a will whereby the testator assumed to dispose of certain specified property. Upon his application to that effect, he was allowed to take the required oath faithfully to perform the duties of the office, and, by the letters testamentary issued him, was charged by the court, as he had been by the testator, to execute the will. Thereafter the property, of which the testator had assumed the right to dispose, came into his possession, and he now claims it as his own. It is true that he has disposed or intends to dispose of it, by his own title, for much the same purpose as the testator had in view; but, as he is not in a position to as-

sert title in himself, or to dispute the title of the testator, his claim cannot be sustained. The testator could not, however, thus dispose of his property to the prejudice of his creditors, or in such manner as to prefer one to the other; and the attempted disposition, whatever it may be, fails, in view of the facts that it is contested by a creditor, and that the succession is insolvent.

Our conclusion, then, is that, as the case is presented, the evidence preponderates in favor of the view that the policy of insurance under which the money in dispute was collected was made in such form as to give to the assured, testator, the right to dispose of the proceeds by last will; that, as he assumed to dispose of them in that way, his executor cannot be heard to claim them as his own, in opposition to the disposition so made, but that, quoad the opponent, a creditor of an insolvent succession, the disposition is of no effect.

An executor has no capacity to appeal on account of creditors whose claims have been rejected, in whole or in part, and, if such creditors fail to appear, the judgment against them will not be disturbed at the instance of the executor. Succession of Trouilly, 52 La. Ann. 276, 26 South. 851. The item of $117 for expenses incurred by the executor in going to New York, we think, was properly disallowed. The prayer of the opponent for an amendment of the judgment cannot be granted, for the reason that there is a limited sum to be distributed, and the proportion to be awarded to each distributee must necessarily be fixed, and the amount made definite.

For these reasons, the judgment appealed from is affirmed at the cost of the executor individually.

### On Rehearing.

### (June 6, 1904.)

In the examination heretofore made of this case, it escaped the attention of the court that the motion for appeal filed by Messrs. Saunders & Gurley, as attorneys for Sam Henderson, Jr., individually and as executor, contains also the words "as well as on their own behalf," and hence that they, as well as their client, had appealed, and were entitled to have the judgment of the district court reviewed, in so far as it affects their claim, and the amount allowed them, for professional services. A rehearing was accordingly granted for the correction of the error thus committed.

As neither the opponent nor any other person in interest has objected in the district court or in this court to the fees of the counsel, as recognized and allowed by the account, we find no sufficient reason for the reduction thereof as made by the judgment appealed from. It is therefore now ordered, adjudged, and decreed that the judgment appealed from be amended by avoiding and reversing so much thereof as reduces the fees allowed by the executor to Messrs. Saunders & Gurley for professional services rendered in this succession and in the matter of Gauche v. Succession of Henderson, and that, as thus amended, said judgment be affirmed. It is further ordered, adjudged, and decreed that Messrs. Saunders & Gurley recover of the appellee so much of the costs of the appeal as may have been paid by them.