BRUNOT, J.
 

 The relatives of Miss Rosalie Elizabeth Grevenig had her placed in the Louisiana Retreat for observation and mental treatment. While she was an inmate of that institution, she was interdicted. After her interdiction she was confined in the retreat for several months, when she escaped from custody, and, through an attorney at law, filed a suit against her euratrix attacking the validity of the judgment of interdiction upon the following alleged grounds, which- are set up in articles 2 and 3 of the petition, to wit:
 

 That all of the interdiction proceedings were ex parte; that neither the proceedings in that suit nor the judgment rendered therein was had contradictorily with her; that the appointment of a curator ad hoc to represent her in said proceedings was a nullity; and that service of the citation and petition for interdiction upon her while she was confined in the Louisiana Retreat was contrary to law.
 

 The prayer of the petition is for a judgment annulling the judgment of interdiction and for an injunction restraining its execution. The answer of the euratrix puts the said allegations of the petition at issue, and avers that it is not alleged in the petition that the interdict is now or was sane at the time the interdiction proceedings were had. On the issues thus joined the case was tried, and for written reasons assigned the following decree was rendered:
 

 “The judgment of the court therefore is that the demand of plaintiff be rejected, and that Miss Grevenig, for the time being, for her own good and protection, be committed to the care of the Louisiana Retreat, reserving, of course, the question whether with changing conditions she should not be removed to some other institution or given her liberty.”
 

 On thé same day the judgment rejecting plaintiff’s demand was rendered, Mr. J. Olin Chamberlain, the attorney of record for the interdict in that suit, filed an opposition to the provisional account of the euratrix of the interdict, upon the ground that he was a creditor of the estate of the interdict in the sum of $700 for professional services rendered the interdict in the suit to annul the judgment of interdiction. This opposition was heard and dismissed. Both of the foregoing judgments were appealed from, the appeals were perfected, and they are presented to this court in one transcript and as consolidated appeals.
 

 
 *1029
 
 We have read the record carefully and find that while the petition presents but one question for determination, viz., the nullity vel non of the judgment of interdiction, expert and lay testimony was admitted, without objection, to show the condition of mind of the interdict at the time the interdiction suit was filed and at the time the proceedings herein were had. The learned judge of the civil district court has reviewed the testimony in the record and has correctly summarized the facts which, with reasonable certainty, are established by it. We therefore quote from his written reasons for judgment as follows:
 

 “It is proved that citation was served upon defendant. It is proved that when she was visited, before the delays for answering had expired, by an attorney who had been employed by her in business which she previously had, she told him that she was content to let the law take its course. The testimony of this attorney, Judge John B. Fisher, is that she did not retain him to defend the suit. His testimony to that effect is not disputed by the interdict herself, who was not put upon the stand. There is no reason to doubt the statement made by Judge Fisher, and I take the fact to be proved according to his statement.
 

 “It is proved, also, that if she had desired to consult another attorney, she could have done so without difficulty. The record is full of proof that any one who wished to see her could do so. She was not prevented from consulting with any one with whom she wished to consult. The delay for answering having expired, without any appearance of the defendant, this court appointed Judge Fisher to represent her, and selected him not only because he is a respectable and competent member of the bar, but because the court was informed that he had been the attorney of Miss Grevenig and her mother. This attorney put the case at issue. Medical experts were appointed by the court, and the case came on to be heard in the regular and formal manner, and judgment was rendered1 after hearing the testimony of Dr. O’Hara, one of the experts. All the formalities then were strictly observed. The charges of collusion and ill practices are supported by nothing in the record. There is no word of testimony which impugns the perfect good faith and disinterestedness of the persons who moved for the interdiction. The demand then for a nullity of the judgment must fall.
 

 “Notwithstanding the pleadings of plaintiff present only the issue of nullity vel non of the .judgment, testimony was offered, and received without objection, to the condition of mind of the interdict at the time of the original proceedings and at present time, and, as the record now stands, this may be treated as a suit with alternate demand for the raising of the interdiction. On that issue, for the plaintiff, there is the testimony of Dr. Lopez, Dr. Fenno, and Dr. Gazenavette. These gentlemen are experts in mental diseases, of good standing, but they did not avail themselves of data readily at hand which if consulted' ought to have affected their judgment; that is to say, although they knew this lady had been confined to the Louisiana Retreat under the supervision of the superintendent and nurses of that institution, and had been treated during that period by Dr. Unsworth, the physician of the retreat, none of them consulted any of these persons for the ascertainment of facts which the experts, it seems to me, must have known were in their possession. These experts properly would have guarded themselves against being influenced by the opinion of Dr. Dnsworth. I do not see, however, with regard to the proper performance of their duties, they could have deprived themselves of the facts within Dr. Unsworth’s knowledge, and which he could have put at their disposal.
 

 “These gentlemen did not apply to the family of Miss Grevenig for information. I do not appreciate that they had a right to assume that the family, who are respectable, decent people of this community, would have misled them. If the members of the family were prejudiced, the experts should have endeavored to explore the grounds of prejudice so as to be able, if necessary, to discount the statements made by members of the family. I must say, therefore, that these experts based their opinion upon an incomplete investigation and an incomplete appreciation of the facts. I am informed by all of them that mental diseases frequently produce no physical effects ascertainable by visual observation; that frequently the intellect appears to be intact, and that paranoiacs have the ability, when under observation, to mask their symptoms and to hide their delusions. For this reason it is all the more necessary that the gentlemen, in the position that these experts were in, should make their investigations as broad and searching as possible. I must take into consideration, also, that though all of them have remained in the courtroom throughout the trial of this case and heard the testimony of the witnesses, so that they thus became acquainted with facts not previously known to them, none of them was recalled to the stand to state an
 
 *1031
 
 Opinion based upon this full disclosure of the case.'
 

 ’ “On the other hand, Dr. Unsworth had Miss Grevenig under his observation for more than a year; he was her responsible medical attendant 'during .that period. Dr, O’Hara had frequently Visited the Louisiana Retreat where she was confined and had occasion to observe her, he says, about once a month throughout the period Of her confinement, and he gave particular attention to her case when he received his appointment here. These physicians are alienists of reputation and standing, and the opinion which they express, namely, that Miss Grevenig is affected with insane delusions, gets weight and authority not only from their reputation, but from their opportunities of knowing the facts on which such opinion is based. If the case were left in doubt on comparing the testimony of the alienists called by plaintiff with ■those called by the curatrix, the scale would be turned by the testimony of Dr. Yan Wart. This gentleman is one of the leading alienists of this community. He was appointed by the court of its own motion-to examine the interdict, to attend the trial, and to give an opinion at the close of the trial on -Miss Grevenig’s condition. His opinion is that Miss Grevenig is suffering ffrom insane delusions, and that she ought to be for the present confined in an institution.”
 

 ■ • During the progress of the trial exceptions to the capacity of Mr. Chamberlain to represent the interdict herein were filed, and the admission, in evidence, of certain testimony taken out of court was objected to. It is not necessary to review the rulings on these matters, for the reason that the judgment rejects the plaintiff’s demand and it is based upon testimony that was not objected to.
 

 In suits for interdiction, where the interdict has been cited and served with the petition, and is ngt otherwise represented by counsel, it is the duty of the court to appoint an attorney ad hoc to defend the suit. In this ease the interdict consulted the friend and regular attorney of herself and her family. This attorney declined to represent her as her employed counsel, but he accepted the court’s appointment and defended the suit in the capacity of attorney ad hoc, and all of the proceedings were had contradictorily with the attorney ad hoc. The proceedings were, therefore, not ex parte, and the attack upon them, as well as the alleged nullity of the appointment of the attorney ad hoc, is without merit.
 

 Mental infirmities are of infinite degree, and to what extent the mind must be affected to warrant a judgment of interdiction is largely dependent upon the particular facts of each case. The accepted rule is that the law intervenes in behalf of a person when the malady affecting his intelligence prevents him from governing his person or his affairs. C. C. art. 422, provides that all persons who are “incapable of * * * administering their estates” may be interdicted. The words quoted from C. C. art. 422, have a definite and fixed meaning in the abstract, but in our jurisprudence they have
 
 become
 
 elastic and relative when applied to some particular state of facts:
 

 On the opposition of Mr. Chamberlain to the homologation of the provisional account of the curatrix, in which he seeks to recover from the estate of the interdict, on a quantum meruit, a fee for services rendered as her attorney under a quasi contract, the learned trial judge correctly says:
 

 “Mr. Chamberlain acted at the request of the interdict, but, of course, does not pretend to have a contract of employment. His claim is based on a quasi contract. There is no doubt that an obligation ex quasi contractu may arise against one non sui juris; but the basis of it is benefit received, and to make out his case it is necessary for Mr. Chamberlain to show that his services benefit the interdict. The court does not question Mr. Chamberlain’s good faith, and his prosecution of the suit exhibited zeal and industry and ability of a high order; but, for all that, he did not succeed, and so far from bettering the interdict the suit imposed on her small estate very heavy expenses in defending it.”
 

 The judge also found, as we do, that, in suits to annul judgments of interdiction, the case of Fenner v. Succession of McCan, 49 La. Ann. 600, 21 So. 768, and the other au
 
 *1033
 
 thorities relied upon by Mr. Chamberlain have application only when the service performed and for which compensation is claimed resulted in securing for the interdict some relatively compensatory advantage or benefit.
 

 We think the judgments appealed from are correct, and, for the reasons stated, they are affirmed, with the costs of appeal from the judgment rejecting plaintiff’s demand to be taxed to the estate of the interdict, and the costs of the appeal from the judgment dismissing the opposition to be paid'by opponent.