## No. 12,369.

### SUCCESSION OF WILLIAM HEFFNER.

| 49 | 407 |
|----|-----|
| 49 | 613 |
| 49 | 407 |
| 51 | 129 |
| 51 | 130 |
| 49 | 407 |
| e117 | 549 |
| 49 | 407 |
| 123 | 510 |
| e123 | 511 |

1. Where an executor having made, as executor, payments of claims placed on his account, these charges were contested below, and the question is the correctness and legality of such payments, the executor has a direct official and personal interest in sustaining the payments, and he has a right to appeal from a judgment on such subject matter adverse to him.

2. Where one who has qualified as executor is brought into court in his official capacity to defend an attack upon the validity of the will which he is executing, he has a right to employ counsel to defend such suit, and the services of such counsel are properly chargeable to the estate.

3. Where a plaintiff, seeking to annul a will, has proceeded against the executor named in the will and the testamentary heirs and special legatees instituted therein, and has obtained judgment, setting aside the will with costs against all the defendants *in solido*, the executor who has paid these costs in full is entitled to charge them up in full against the succession in his account.

4. Payments made by an executor, without order of court, to special legatees under a will subsequently annulled, will not be recognized.

5. One ceases to be executor when the judgment annulling the will appointing him such becomes final.

6. If, from a scrutiny of the final account which a curator or executor has rendered on the demand of the heirs, he shall appear to owe a balance, he shall be sentenced to pay it to the heirs with interest from the day of judgment. (C. P. 1007.)

APPEAL from the First Judicial District Court for the Parish of Caddo. *Land, J.*

*Wise & Herndon* for Executor, Appellant.

*Harrison & Aston* and *D. T. Land*, for Opponents, Appellees.

Argued and submitted January 20, 1897.
Opinion handed down February 15, 1897.

### STATEMENT OF THE CASE.

William Heffner died in the parish of Caddo on the 20th day of February, 1895, having disposed of his property by what purported to be a last will and testament. The instrument was probated as such, and James Heffner, who was named therein as executor, qualified thereunder.

On September 14, 1895, Jackson Heffner *et al.* instituted a suit to annul the will, and to recover as legal heirs three-fourths of the estate. Service was made on James Heffner, individually and as executor. The suit resulted in the District Court in a judgment in favor of the plaintiffs, annulling the will and ordering them to be placed in possession of three-fourths of the estate. From that judgment James Heffner individually and as executor appealed. On appeal the judgment was affirmed. 48 An. 1088, Heffner *et als.* vs. Heffner *et als.* Jackson Heffner and the other plaintiffs in the suit to annul the will then ruled the executor to file an account. The executor filed his account.

In his petition accompanying the account the accountant averred that the succession of Wm. Heffner had been fully administered in accordance with the will, with the exception of the real estate which was still undisposed of, and the balance due the four sons of Jackson Heffner, amounting to one thousand dollars. He prayed that notice be given of the account, which he declared was his final act, and that he be discharged.

The account filed was as follows:

*James Heffner, Executor, in Account with Succession of Wm. Heffner.*

| | |
|---|---:|
| Real estate as shown by inventory | $1,020 00 |
| Notes as shown by inventory | 8,830 07 |
| Note on Sam Butterfield not inventoried | 2,300 00 |
| Cash on hand as shown by inventory | 2,707 07 |
| Total | $13,847 07 |

## Succession of Heffner.

### OR.

#### Privileged Debts.

| | |
|---|---|
| Funeral expenses | $161 00 |
| F. A. Leonard, notary's fees | |
| F. A. Leonard, clerk's fees in succession | |
| Clerk's fees in suit of Jackson Heffner et al. vs. James Heffner et al. | |
| To deposit in Supreme Court in suit of Jackson Heffner et al. vs. James Heffner et al | 20 00 |
| To amount paid for brief in said suit | 5 00 |
| To R. J Looney, attorney, for probating will | 25 00 |
| To Wise & Herndon, attorneys, for defending suits of Jackson Heffner et al. vs. James Heffner et al | 500 00 |

#### Amounts paid under terms of Will.

| | |
|---|---|
| To amount paid Jackson Heffner's sons | 1,000 00 |
| "    "    "  Mrs. Mary Wellborn | 2, 21 51 |
| "    "    "  Ollie Akard | 2,921 51 |
| "    "    "  Laura Booth | 2,921 51 |

Jackson Heffner and his co-plaintiffs filed an original and an amended opposition to the account, setting up in the first opposition as grounds:

1. The executor failed to account for the interest on the notes set forth in his account and for the rents and revenues of the real estate belonging to said succession.

2. Because the debit side of said account foots up fourteen thousand eight hundred and sixty-seven dollars, and not thirteen thousand eight hundred and forty-seven dollars and seven cents as stated in the account.

3. Because the item of one hundred and sixty-one dollars funeral expenses and the item of twenty-five dollars fees for probating will are not due and owing by the succession.

4. Because the amount of the items of costs in succession and attorney's fees are not stated and are not due by said succession.

5. Because the amount of items of costs in suit of Heffner et al. vs. Heffner et al. are not stated and are not due by the succession and James Heffner has been condemned personally to pay said costs and as executor wrongfully and fraudulently disposed of eight thousand seven hundred and sixty-four dollars of the moneys and property of said succession, and because the defence of said suit was unnecessary and against the interest of said succession, as said executor well knew.

6. Because the item of five hundred dollars attorney's fees to Wise & Herndon for defending suit of Heffner et al. vs. Heffner et al. is not due and owing by said succession for the reason that Wise & Herndon were employed and represented James Heffner and the

other legatees individually, and the defence of said suit was unnecessary, against the interest of said succession and involved a pure question of law, with the authorities all in favor of the plaintiffs, as the said Wise & Herndon well knew; and further, because if said fees are due by said succession, which was denied, the same were exorbitant and excessive.

7. Because the executor was not entitled to a credit for the sum of one thousand dollars claimed to have been paid to Jackson Heffner's sons, and two thousand nine hundred and twenty-one dollars claimed to have been paid to Mary Wellborn—a like amount to Mrs. Akard, and a like amount to Mrs. Booth, because—

(1) Said sums were not paid out by the executor; (2) because if said sums were paid out by the executor they were made under the terms of a will which was an absolute nullity on its face; (3) because plaintiffs in the suit of Heffner vs. Heffner obtained a final judgment against James Heffner individually and as executor, and against the parties to whom said payments were claimed to have been made, recognizing them as the owners of three-fourths of the estate of Wm. Heffner, and ordering them to be put in possession of same, which said judgment they pleaded as *res judicata* on the question of the ownership and possession of said estate; (4) because prior to the pretended payments opponents made a demand on James Heffner, individually and as executor, for three-fourths of the estate, and pointed out to him the nullity of the will—that if the executor paid said sums to said parties he did so with full knowledge of the nullity of the will and of the rights of the opponents, and he had wrongfully and fraudulently disposed of eight thousand seven hundred and sixty-four dollars belonging to the succession. They prayed that their opposition be maintained, and that they have judgment against James Heffner individually and for three-fourths of the property and money of said estate not accounted for or disposed of by him, with ten per cent. per annum interest thereon and for general relief.

In the amended opposition they averred that James Heffner claimed to be owner of one-quarter of the property of the succession in his hands as executor, basing the same on the fact that he was one of the heirs at law of Wm. Heffner, and, as executor, he proposed to distribute the property in his hands in the proportion of one-fourth to himself, individually, and three-fourths to opponents. That they opposed said claim and said proposed distribution for the reasons:

1. That James Heffner, executor, was bound to account to opponents as owners for three-fourths of said estate, which he had failed to do, the property accounted for being less than one-half of the amount due to opponents. 2. That the executor had wrongfully and fraudulently disposed of a large amount of property belonging to said estate, as set forth in the original opposition filed, and had thereby rendered himself personally responsible to said succession and opponents, and was not entitled to receive any part of said succession as heir before he paid what he owed to the succession—his share as heir being compensated and extinguished *pro tanto* by the amount due by him to said succession. They prayed that in the event judgment be rendered in their favor against James Heffner, individually, that the amount of said judgment be declared compensated and extinguished *pro tanto* by the amount of the share of said James Heffner as heir of William Heffner in and to the property of said succession now in his hands as executor, and that said executor be ordered to deliver to opponents, as owners, within ten days from the adjournment of court the entire property of said succession now in his hands as executor, less all legal claims against the same that might be allowed by the court. They prayed for all other orders and decrees necessary in the premises.

The District Court rendered judgment increasing the amount of the debit side of the account by the sum of one thousand and twenty dollars, this being merely the correction of a clerical error in the statement. It sustained the items of one hundred and sixty-one dollars for funeral expenses, the item of twenty-five dollars for attorney fee for probating the will, and an amount of nine dollars and sixty-five cents for succession costs and notarial fees. It rejected the amounts of items of costs in the suit of Heffner vs. Heffner, and also the item of five hundred dollars for services rendered by Wise & Herndon as attorneys in defending the suit of Heffner vs. Heffner. It rejected the claim made by the executor for credit for amounts paid to Mrs. Mary Wellborn, Ollie Akard, Laura Booth and the four sons of Jackson Heffner as special legatees under the will. It decreed " that Jackson Heffner and his co-opponents do have and recover judgment against James Heffner individually, and as late executor of the succession of William Heffner, the full sum of ten thousand two hundred and thirty-eight dollars, being three-fourths of the balance (in his hands), with legal interest from date of judgment until paid. It further

ordered and decreed that opponents be recognized as the legal owners of three-fourths of the real estate described in the inventory with the right to sue for a partition of the same and to demand in said proceeding the collation of what may be due them by James Heffner, the owners of the remaining one-fourth interest reserving their right to execute their judgment according to law.

The court at the same time sustained an opposition to the account which had been filed by Harrison & Aston claiming to have paid taxes due by the estate for such amounts and been subrogated to the rights of the State.

After said judgment was rendered James Heffner "individually" moved to set aside the judgment rendered against him for the reason that he individually was no party to said suit and made no appearance therein, and further, because said judgment was rendered in chambers without his knowledge or consent. The court overruled the motion, stating that under Act No. 72 of 1884 no motion in the nature of a new trial was permissible, as it was made the duty of the judge at the same time as reading the decree to grant the order of appeal—that the minutes would show that the judgment was rendered in chambers pursuant to consent of parties who were represented by their counsel. The motion to set aside the judgment for the reason that it was rendered at chambers without his consent was overruled.

Opponents moved to dismiss the appeal from that part of the judgment rejecting against said succession the claim of Wise & Herndon for attorney's fees, and rejecting claim for the costs of that suit, and from that part of the judgment condemning said executor personally in favor of opponents. Because said Wise & Herndon, and the parties to whom said costs are due, have not appealed, and the executor has no capacity to appeal in behalf of parties whom he has placed on his account as creditors, and whose claims have been opposed and rejected by the court.

2. Because James Heffner has furnished no bond personally,* but

---

*The bond furnished by James Heffner for an appeal reads: "We, James Heffner, executor Wm. Heffner estate, as principal, and S. B. Johnson as surety, are held and firmly bound unto the clerk of the First Judicial District Court in the sum of one hundred and fifty dollars," and declares the condition of the bond to be that "whereas the above bounden James H ffner, executor, has applied for and obtained an order for a devolutive appeal from the judgment lately rendered against him by the First Judicial District Court, for Caddo parish, in the case of the succession of Wm. Heffner, opposition to final account * * * now, therefore, if the said James Heffner, executor, shall well and truly prosecute his said appeal, etc. * * * then this obligation to be null and void, otherwise to remain in full force and effect."

solely as executor, and as executor can not appeal in his official capacity from a judgment against him personally.

## ON THE MOTION TO DISMISS APPEAL.

˙The opinion of the court was delivered by

NICHOLLS, C. J.   Appellant contends that he has paid the parties whose claims were opposed, and he is vitally interested himself in having their claims sustained.   He calls our attention to the fact that the capacity in which he acted was as executor and not as administrator, and to the decision in the matter of the succession of Ames, 33 An. 1317, in which a distinction is drawn in respect to the questions raised in the motion as to his right of appeal between an executor and an administrator.   He also directs our attention to the fact that, while the judgment is against him personally, it is also against him as executor.

This case does not present the question of the right of an administrator or executor, who has filed an account or tableau of proposed payments on which he has placed certain parties as creditors, to appeal in his official capacity from a judgment of the District Court rejecting the claims on an opposition made to the claims, as being really succession claims.   We have decided a number of times that if the parties aggrieved by the decision do not themselves appeal, it is no part of the duty of the administrator or executor to champion their rights.   In this case the executor has already made, as executor, payment of the claims which were contested below, and it is the legality and correctness of such payments made by him which were litigated below.   Under that phase of the question the executor had a direct official, and also personal, interest in sustaining the payments if he could.

The second clause of the motion to dismiss refers, we presume, to that portion of the judgment appealed from by which opponents were decreed " to recover of James Heffner, individually and as late executor of the succession of William Heffner, the sum of ten thousand two hundred and thirty-eight dollars, being three-fourths of said balance (shown by the account filed), with legal interest from this date (date of judgment) until paid, and by which opponents were recognized as the legal owners of three-fourths of the real

estate described in said inventory, with the right to sue for a parti-
tion of the same and to demand in such proceeding the collation of
what might be due them by James Heffner, the owner of the remain-
ing fourth, reserving, however, their right to execute this judgment
according to law.''

The judgment from which the executor has appealed was one ren-
dered upon an opposition filed to his account as executor. It under-
took to fix and determine the rights of the opponents to the funds
in the hands of the executor, and to direct what disposition should
be made by the executor. The executor had a direct official as well
as personal interest in the subject matter of that judgment which
carried with it a right to appeal from it. What issues can be
legally raised and what legally passed on on this appeal, we can
determine and declare after hearing. The motion to dismiss is
overruled.

### ON THE MERITS.

The first item opposed is the payment of five hundred dollars by
the executor to the firm of Wise & Herndon for attorney's fees in
defending the suit of Jackson Heffner et al. vs. James Heffner et al.,
in which the plaintiffs successfully attacked the will of William
Heffner and had it set aside.

It is claimed on behalf of opponents that the instrument offered
and probated as the will of William Heffner was so manifestly
defective as such that it was scarcely permissible to have attempted
to defend it—that its nullity was apparent on its face and the attor-
neys employed really made no serious defence and their labor was
practically nothing.

It is insisted that the suit of Jackson Heffner vs. James Heffner
et al. to annul the will was brought by legal heirs representing
three-fourths of the estate of William Heffner, against James Heff-
ner, individually and as executor, and against all the legatees under
the will either by actual citation or through a curator ad hoc, and
that when the defendants in the case employed counsel and de-
fended the will they did so in their own interests, and that the
attorneys engaged should be paid by James Heffner and the lega-
tees who were really their clients.

In Sterlin's Executor vs. Gros, 5 La. 100, it appears that one
Philip Sterlin died leaving two instruments purporting to be his last

will and testament.   In one of these instruments a natural son was
acknowledged as such and to him was bequeathed three-fourths of
the estate.   In the other one Celestin Gros was appointed executor,
and that instrument having been probated, he qualified as such.
The natural son brought suit to obtain possession of the estate, pro-
ducing a copy of the notarial act which he declared upon as a will.
He directed his proceedings against Gros as executor, attacking the
will under which he had been appointed as a nullity on the ground
that it was not legally witnessed.

The District Court annulled the will and its judgment was affirmed
on appeal.   A question was raised in the Supreme Court as to costs
of suit.   The court said: "The remaining question relates as to
costs.   Plaintiff contends that the estate should not be responsible
for them, as the will was not that of the deceased.   We think it
ought.   The costs were incurred in this case in consequence of the
act of the testator and it was the duty of the executor to maintain
the will."

In Girard vs. Babineau, 18 An. 604, the plaintiff, an attorney at
law, brought suit to recover a fee for professional services rendered
the succession of which defendant was the administrator.   The court
said the claim was advanced by the plaintiff, relying upon the ruling
in the case of Sterling vs. Gros, and as part of the costs incurred by
the testamentary executor in maintaining the will.   The claim was
rejected.   The report of the case shows that the deceased, Margue-
rite Babineau, had left as a will an act under private signature, in
which she bequeathed to one Narcisse De Blanc several slaves, and
appointed him her testamentary executor.   The plaintiff, acting as
the attorney of De Blanc, filed a petition praying for the probating
and homologation of the will and for letters testamentary.   The
heirs at law filed an opposition to the homologation of the will,
alleging its nullity.  Notwithstanding the opposition, De Blanc, claim-
ing to be executor under the will, filed a petition for an inventory,
and afterward another for the sale of the property.

The heirs at law then instituted a direct action against the lega-
tees under the will to have the same set aside.   In that action
De Blanc was not sued in his capaacity as testamentary executor, but
as one of the legatees.   Plaintiff (Girard) filed an answer for
De Blanc; other attorneys appeared for the different legatees, and
thus issue was joined between the heirs and legatees.   The will

seems to have been set aside. In its opinion the court said: "From the moment all the legatees appeared in court and filed their answers to the direct action brought against them to annul the will, the *contestatio litis* was between them and the heirs, and not between the latter and the testamentary executor. After the filing of the opposition to the probating of the will the testamentary executor had no authority to employ counsel to ask for a sale of the property."

The court allowed, however, as costs, seventy-five dollars for petition for probate of the will and ten dollars for the inventory, which was declared to be a conservatory act for the benefit of both the heirs and the legatees.

It does not appear from the opinion that the will ever went to probate.

In Succession of Hasley, 27 An. 587, it appeared that David Hasley, the deceased, left a will, by which he gave the usufruct of all his property to his widow during her life, and appointed her his executrix. The will was probated, and Mrs. Hasley was confirmed as testamentary executrix. The heirs of Hasley then sued to have the will annulled, and by a judgment of the Supreme Court the will was held to be valid. The heirs then sued to reduce the legacy to the disposable portion and for the rendition of an account and a partition. There was judgment reducing the disposition in the will and ordering an account. An account was filed and various oppositions were made among these was one against the fee for defending the suit in which the validity of the will was attacked; also the fee for defending the suit to reduce the legacy to the disposable portion and for an account. The former of these two oppositions was rejected, the court holding it was properly chargeable to the estate. In sustaining the second opposition, the court said: "The testator having left no forced heirs, the executrix might have learned from any member of the bar that the bequest of the usufruct of the whole of his property was reducible, and there was no necessity for defending such a suit—at least, by the executrix. If the legatee chose to defend it, she should pay a reasonable fee; it was not a proper charge against the estate."

In the present succession (that of William Heffner) the will of the deceased was actually probated, and the executor named therein actually qualified. The plaintiffs in the suit of Jackson Heffner *et al.* vs. James Heffner *et al.* brought him into court in his official capacity

as a defendant. As such he resisted, both in the District and Supreme Courts, the claims of the plaintiffs. Plaintiffs, it is true, made all the legatees, among whom the executor himself was one, parties to the action, but the fact remained that the executor was officially a defendant on plaintiff's demand. It was proper for him, as such, to employ counsel and defend the suit. He employed Messrs. Wise & Herndon—that firm seems to have been employed by all the parties defendant, not solely by the executor, as in the pleadings they appear and act for all. We are of the opinion that accountant is entitled to a credit for three hundred dollars for and on account of the fee of Messrs. Wise & Herndon.

The second item opposed is the charge made against the estate by the executor for costs paid by him in the defence of the suit of Jackson Heffner vs. James Heffner, Executor, *et al.*

Opponents claim that the judgment of this court in that suit on appeal definitively settled that question adversely to the right of reimbursement claimed by the executor. Our judgment was: " The judgment of the lower court is affirmed with costs." The judgment affirmed condemned the defendants in that case *in solido* to pay the costs; the defendants were James Heffner, individually and as executor, and the various persons named as legatees in the will. The judgment relieved the plaintiffs in that case, as such, from the responsibility for costs, and authorized them to charge the estate itself with any amounts paid out by them for that purpose. It, however, charged the estate represented by James Heffner to pay solidarily with James Heffner individually, and the other legatees who were defendants in the suit, the costs of suit. Parties holding claims for costs were entitled to recover from the executor, as well as from the other parties, and if, in point of fact, the executor paid the accounts he is entitled to credit for the same. Opponents who, as plaintiffs, were entitled to reimbursement for amounts paid out by them for costs primarily, and who, as plaintiffs, were relieved from any direct liability to the executor for unpaid costs paid out by him, have indirectly, as heirs at law, to take their share in the succession, lessened by the amounts of the costs paid by the executor. James Heffner, individually, will have, indirectly, to pay his share of the costs as an heir.

Opponents, as plaintiffs in the suit of Jackson Heffner *et al.* vs. James Heffner, Executor, *et al.*, considered the executor as the

27

proper and necessary party against whom they should proceed in their attack upon the will, and accordingly brought him into court as such. *Ex industria* they made James Heffner individually, and the various parties who were made legatees under the will, parties defendant, and recovered judgment against them as well as against the succession for costs. Opponents have the right, as plaintiffs in that suit, to enforce their judgment against all the defendants therein; but we do not think their judgment can be set up in this suit against the credit claimed by the executor for payments made by him as such under decree of the court. It may be well to say that the increased cost incurred by reason of the fact that the legatees were individually made parties defendant in the suit was almost nominal. Those parties, with the exception of James Heffner, were not heirs at law and they are not before the court, and it would be difficult to know what their respective *pro rata* of costs would be. We think the credit which the executor claims for costs in the suit mentioned is a proper credit and should be allowed. Sterlin's Executor vs. Gros, 5 La. 105; Girard vs. Babineau, 18 An. 604; Succession of Hasley, 27 An. 590; Chapoton vs. Creditors, 46 An. 415.

The next item opposed was a claim advanced by the executor to be credited with one thousand dollars paid to Jackson Heffner's sons —two thousand nine hundred and twenty-one dollars and fifty-one cents to Mrs. Mary Wellborn—a like amount paid to Mrs. Ollie Akard and a like amount paid to Mrs. Laura Booth.

We think the District Court ruled correctly in rejecting these claims. The parties to whom payment was made were named special legatees in the will which was annulled. The payments were made without order of court and at the executor's peril.

The executor complains of that portion of the judgment by which opponents are decreed to recover against himself individually and as executor " the sum of ten thousand two hundred thirty-eight dollars and fifty-six cents as being three-fourths of the balance in the hands of the executor with interest, and further recognizing them as owners of three-fourths of the real estate described in the inventory, with the right to sue for a partition of the same, and to demand in said proceeding the collation of what sum may be due them by James Heffner, the owner of the remaining fourth, reserving their right to execute their judgment." He contends that though he consented that the decree in the case should be rendered (as it was) at

chambers under Act 72 of 1874, his consent was given only in his official capacity as executor, and he was not before the court individually. That the decree rendered was one homologating an account of executorship which could not be rendered in vacation or at chambers; citing in support of this position Succession of Bougère, 29 An. 378, 381.

He also contends that he was before the court only as an executor rendering an account—that he was not individually and personally responsible to opponents for any amount which might be coming to them as heirs in the succession and could not be condemned to pay the same. That Art. 993 of the Code of Practice and the decisions of this court in Dupuy vs. Dashiell, 16 La. 126; Wells vs. Roach, 10 An. 343; Stevens vs. Stevens, 13 An. 416; Succession of Philbrick, 18 An. 220; Succession of Comstock, 44 An. 429, shows the circumstances under which an executor may become personally liable.

At the time the account which is opposed was filed, James Heffner was no longer executor of the succession of his brother. He ceased to be such when the judgment annulling the will became final; when the plaintiffs in that suit afterward went into the succession of Wm. Heffner in the District Court for Caddo and ruled James Heffner as executor to file his account, and in obedience to orders of court the account was filed, it was that of one, not who was, but who had been the executor of an estate. The plaintiffs none the less treated him as an executor, and so dealt with him, bringing him into court by rule and objecting to the account by oppositions. Heffner, personally, was not before the court. Opponents are mistaken in their amended opposition in stating that accountant proposed in his account to make a distribution of the assets of the succession— three-fourths to opponents and one-fourth to himself. He simply made a statement showing the assets of the succession in his hands on one side and the credits to which he claimed he was entitled on the other, without any intimation or claim as to how the assets should be distributed. In the suit of Jackson Heffner vs. James Heffner the present opponents had, as plaintiffs, been contradictorily with James Heffner individually and as executor recognized and decreed to be the legal heirs of William Heffner and entitled as such to three-fourths of his succession, and they had in the same judgment succeeded in obtaining a judgment that they be placed in possession. That judgment became final long ago independ-

ently of any judgment of court rendered upon the opposition filed in the present proceedings. When the plaintiffs in that suit ruled James Heffner, as executor, into court, they did so with their recognized status as heirs to three-fourths of the estate and with an existing decree in their favor that they be placed in possession. The matter before the court through the account was the ascertainment of what the succession in his hands really consisted of for purposes of distribution. Accountant when he filed his account averred that it was a final account, stated that the succession was fully administered and that the only asset of the succession not in money in his hands was the real estate which still remained unsold.

When the lower court after the account was filed and the oppositions had been made and tried, rendered the decree it did, matters were substantially in the situation called for by Arts. 1000, 1001, 1002, 1003, 1004, 1005, 1006 and 1007 of the Code of Practice, with the sole exception that the proceedings commenced with a rule instead of a petition and that movers in rule were already recognized as heirs and then held a judgment ordering them to be put in possession of three-fourths of the estate. Accountant made no objection on the score of the manner in which he was called into court, but rendered an account as directed.

What are the provisions of Art. 1007 of the Code of Practice in relation to the judgment proper to be rendered on the homologation of the final account? The article declares that "if from a scrutiny of the account, the curator or executor shall appear to owe a balance he shall be sentenced to pay it to the heirs or other claimants, with interest, from the day of judgment."

Article 1057 of the Code of Practice declares that "if the curator, testamentary executor or administrator refuses or neglects to pay the amount for which judgment has been rendered in one of the modes pointed out in the preceding articles, or if he fails to prove that he has no funds in his hands, the party in whose favor the judgment was rendered may take out execution against him, under which his property to a sufficient amount to pay debt shall be seized."

Appellant seems to apprehend that the judgment rendered in the present suit means something other and different from that which is contemplated in Art. 1056 of the Code of Practice. We do not so understand it. If the parties holding the judgment were to place a wrong construction upon its scope and effect and proceed to enforce

it in an unauthorized manner the judgment debtor would have his remedy, but we can not by anticipation suppose that such a thing will happen or that because a correct judgment may be misinterpreted in execution, it should be set aside.

Accountant does not pretend to have any claims against the succession or against his co-heirs—he does not pretend that their rights as heirs are subject to deduction from any cause or that there is anything requiring a partition. As we understand matters the opponents in this case constitute with accountant himself all the legal heirs of the deceased. Accountant has in his hands a certain sum of money which calls for a division or a distribution rather than a partition. Rachal vs. Rachal's Heirs, 10 La. 458.

We see no reason why opponents should not to the extent of their recognized rights receive present payment. It will be practically a provisional partition of funds to be followed by a definitive partition when the real estate is disposed of. Opponents are entitled to be paid presently three-fourths of the balance of the "funds" on hand after accountant shall have received the credits to which he is entitled, with legal interest from date of judgment of the District Court until paid, costs of both courts payable out of the succession funds.

We restate the account as follows:

### DEBITS.

| | |
|---|---|
| Real estate as shown by inventory | $1,020 00 |
| Notes inventoried | 8,840 07 |
| Note Sam Sutterfield (not inventoried) | 2,300 00 |
| Cash on hand as shown by inventory | 2,707 07 |
| Total to be accounted for | $14,867 14 |

### CREDITS.

| | |
|---|---|
| Real estate remaining on hand | $1,020 00 |
| Funeral expenses and doctor's bill | 161 00 |
| R. J. Looney, attorney's fee | 25 00 |
| F. A. Leonard | 9 65 |
| Transcript in suit of Heffner vs. Heffner | 32 00 |
| Wise & Herndon, attorney's fees | 300 00 |
| Amount paid for brief | 5 00 |
| Deposit in Supreme Court | 20 00 |
| Total credits | $1,572 |

### RECAPITULATION.

| | |
|---|---|
| Debits | $14,867 14 |
| Credits | 1,572 65 |
| Balance | $13,294 49 |
| Three-quarters of balance | $9,970 86 |

For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby amended by reducing the amount for which judgment was rendered in favor of opponents, against James Heffner as executor, from ten thousand two hundred and thirty-eight dollars to nine thousand nine hundred and seventy dollars and eighty-six and two-thirds cents, with legal interest thereon from date of judgment of the District Court, and, as so amended, the judgment appealed from be affirmed; costs of both courts to be paid out of the succession funds.