(42 South. 132.)

No. 16,094.

Succession of MORERE.

In re MORERE.

(June 4, 1906. Rehearing Denied Oct. 15, 1906.)

1. EXECUTORS—ACCOUNTING—REHEARING.

Where the relator filed no application for a rehearing as to a certain item of an executor's account, which was rejected by a judgment of the Court of Appeal, the writ of review will be dismissed as to such item, although a rehearing was granted to the opposing party on other issues. No application for a rehearing is required or is permissible in case of a judgment rendered on a rehearing, unless specially reserved.

2. WILLS—CONTEST—ATTORNEY'S FEES — LIABILITY OF SUCCESSION.

Where a last will and testament valid in form was presented by the executor for probate, and was duly proven and ordered to be executed, and the executor was duly qualified and entered upon his administration. and subsequently the will was annulled at the suit of the surviving widow on the ground that the testator was insane at the time of the execution of the testament, *held*, that the succession is bound for the fees of the attorneys employed by the executor to conduct the mortuary proceedings and to defend the will, although he may have been aware of the mental condition of the testator at the date of the execution of the testament.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills. §§ 880, 894.]

(Syllabus by the Court.)

Certiorari to Court of Appeal, Parish of Orleans.

In the matter of the succession of Pierre Morere. Application by Bartholomew Morere for certiorari or writ of review to the Court of Appeal. Writ dismissed in part, and the judgment as to other matters reversed.

Henry Denis, for applicant. Robert John Maloney, for respondent.

LAND, J. On the threshold of this case we are confronted with a motion to recall the writs of certiorari and review on the ground that the relator made no application for a rehearing in the Court of Appeal, as required by rule 12 of this court (28 South. iv).

In Succession of Pierre Morere, 114 La. 506, 38 South. 435, this court decreed the last will and testament of the decedent to be invalid on the ground of insanity.

Bartholomew Morere, executor, filed an account of his administration, placing thereon several charges incurred in the mortuary proceedings, to wit: Commissions as executor, the fee of his attorney, the fee of other counsel employed to defend the suit to annul the will, the notary's fee for making the inventory, appraiser's fees, and costs of court.

The widow in community and natural tutrix opposed all the items on the account, and the first three especially on the ground that the executor and his attorneys knew when they presented the will for probate that the testator was insane at the time he made it.

The opposition was dismissed by the district judge, and the opponent appealed to the Court of Appeal, which amended the judgment by sustaining the opposition as to the commissions claimed by the executor. The widow and tutrix applied for a rehearing, which was granted.

On the rehearing, the court sustained the opposition both as to commissions and attorney fees. One of the judges dissented.

The executor did not apply for a rehearing on the first decree, for the alleged reason that a rehearing was granted on the application of the opponent, before he could prepare an application in his own behalf. The executor did not apply for a rehearing on the second decree, because he considered the rule of law to be absolute that two rehearings are never granted in the same case. On this point, relator cites Westerfield v. Levis Bros., 43 La. Ann. 77, 9 South. 52, holding that "only one rehearing is granted, unless matters are decided which had not been previously considered, and reserve made for a rehearing."

It appears from the affidavit of the clerk of the Court of Appeal that the delay for a rehearing on the first decree expired on February 14, 1906, and it appears from an in-

dorsement on the original record that the rehearing was granted on February 19, 1906. Hence the executor suffered the full delay to expire without presenting an application for a rehearing. The opponent applied for a rehearing only on the question of attorney fees. Hence neither party asked the court to reconsider its decision on the question of the executor's commissions.

Article 912 of the Code of Practice provides that a party dissatisfied with the judgment may apply to the court for a new hearing of the cause, and for this purpose shall present a petition, in which he shall state substantially the reasons for which he thinks the judgment is erroneous, and shall cite the authorities in support of his opinion.

Rule 12 of this court (28 South. iv) provides as follows:

"Hereafter no application for a writ of review will be considered until it appears from the papers filed that an application for a rehearing has been made in the Court of Appeal, considered and overruled."

In other words, the relator seeking the writ must show that he had exhausted his legal remedies by timely application for a new hearing. An application by some other party for a rehearing on other grounds and issues will not avail the relator.

We are therefore of opinion that the writ should be recalled so far as the question of commissions is concerned.

The two items of attorney's fees stand on a different footing, as they were disallowed on the second rehearing, and no application for a second rehearing was permissible.

On this issue the Court of Appeal in first opinion said:

"So far as the claim of attorneys for their fees is concerned, we are of opinion that, whilst Bartholomew Morere can be made to reimburse to the estate, in a proper suit filed for that purpose, and instituted by the widow and natural tutrix, those fees and all other charges and expenses which his illegal action has imposed on the estate, nevertheless, as these attorneys were acting in absolute good faith in

117 LA.—18

this matter, they should not be made to look to Bartholomew Morere personally for their compensation, whatever may be rights of the estate as between it and Bartholomew Morere, but should be paid by the estate."

On rehearing, the Court of Appeal held that as Bartholomew Morere knew that Pierre Morere was insane at the time the will was executed, in presenting the instrument for probate and in conceding the facts, he practiced a fraud on the court, and that "no expenses incurred by him in his effort to maintain this will can be imposed on the estate, whether that expense be for attorney fees or other purposes."

One of the judges dissented, holding that the executor could not assume the judicial function of deciding that the will was null and void, and was bound to offer the will for probate; that he had no personal interest in the will, and his claim for commissions did not constitute such an interest—citing Fenner, Henderson & Fenner v. Succession, 49 La. Ann. 608, 21 South. 768.

The will was in olographic form, and the testator instituted his two children as his universal legatees, and named his brother, Bartholomew Morere, as testamentary executor. The will was written in the presence of Mr. G. V. Soniat, an attorney at law, on November 12, 1900.

On the same day the testator delivered to Bartholomew Morere, for safe-keeping, the will and $7,200 in money.

Four days later, Francis Morere, another brother, caused interdiction proceedings to be instituted against Pierre Morere. In January, 1901, judgment of interdiction was pronounced, and the wife was appointed curatrix of the interdict. Thereupon the curatrix brought suit to annul an alleged settlement between the interdict and Francis Morere and to recover the money deposited with Bartholomew Morere.

The curatrix obtained judgment against both defendants as prayed for. The interdict

died in the insane asylum on April 19, 1903. On April 28, 1903, the will was probated and ordered executed. An inventory, to which the widow was a party, was taken, and letters testamentary were issued to the executor.

On June 20, 1903, the executor filed his account. On June 30th the widow received letters of tutorship, and on July 2d, in her individual capacity and as tutrix, sued to annul the will on the ground that it was not in the handwriting of the decedent, and at the time of its alleged execution the decedent was incapable, by reason of insanity and to the knowledge of the executor, of making a will.

This suit was brought against Bartholomew Morere as executor, who excepted to the action on the ground that the interest of the tutrix was in conflict with that of her wards, and that she was estopped to attack the will by reason of her having participated in the taking of the inventory, and having thereby recognized the capacity of the executor.

The first exception was maintained and the undertutor of the minors was ordered to be made a party. The plea of estoppel was overruled. The district court rendered judgment annulling the will on the ground of insanity, and this judgment was affirmed on appeal. Succession of Morere, 114 La. 506, 38 South. 435.

This court found that Pierre Morere was notoriously insane before and after the date of the execution of the will, to the knowledge of Francis and Bartholomew Morere, and that the proponent failed to prove that the will was made during a lucid interval.

It may be here noted that the undertutor of the minor legatees, in his answer, denied the allegations of the petition to annul the will, and prayed that the suit of the widow be dismissed, with costs.

The account filed by the executor contained an item of $500 attorney fees due the succession of G. V. Soniat, and an item of $660.45, executor's commissions, besides succession costs and other charges.

The widow and tutrix filed an opposition to all the items appearing on the account, on the ground that Pierre Morere was insane at the time of the making of the will, to the knowledge of Bartholomew Morere and of the attorney, G. V. Soniat, who was counsel and curator for the interdict in the interdiction proceedings, and on the further ground that the items were not due and owing.

By consent the claim of Henry Denis, attorney, for $300, for professional services, was considered as forming an item on the account, and it was admitted that all the attorney fees claimed, if due at all, were reasonable in amount. It was admitted that Mr. Gustave V. Soniat had no knowledge of the insanity of Pierre Morere at the time of the making of the will or at any other time.

By consent the opposition was restricted to the purely legal question of the liability of the estate for commissions and attorney fees. There was filed in evidence an agreement of date May 1, 1903, signed by Mrs. Pierre Morere and Bartholomew Morere, by which she agreed to allow him to complete his duties as testamentary executor of the will; he agreeing to turn over to her all the property of the estate as soon as she should file her account as curatrix and quality as natural tutrix, Mrs. Morere agreeing not to contest the will, and Bartholomew Morere agreeing to waive legal delays and hasten the settlement of the succession.

The only charge made in the opposition against the executor is that he had knowledge of the fact that the testator was insane at the time the will was made. We have held that the executor had knowledge of the general mental condition of the decedent, and had failed to prove that the will was made in a lucid interval.

Did such knowledge ipso facto debar the executor from presenting the will for probate and strike all the mortuary proceedings

with nullity? We think not. The will was in due form, having been wholly written, dated, and signed by the testator, in the presence of an attorney, who had no reason to believe that the testator was insane at the time.

The testator bequeathed his whole estate to his minor children, and delivered the will to the executor. Would the latter have been justified in opposing the document because he had reason to believe the testator was insane?

The question answers itself. The executor was not the judge, and had no right to conclude the universal legatees.

Article 928 of the Code of Practice provides that:

"When a testator is dead his testamentary executor or any other person who may feel an interest in having his will executed, shall present a petition for that purpose to the judge of the probate of the place where the succession is open."

We feel no hesitation in holding that it was the duty of the executor to present the will for probate, leaving to the parties interested the onus of impeaching its validity.

The appointment of the executor was not absolutely null and void, and his acts in that capacity were legal and binding.

In such case, although the will be subsequently decreed null and void, the executor will be entitled to commissions and attorney fees. Succession of Robertson, 49 La. Ann. 868, 21 South. 586, 62 Am. St. Rep. 672.

In Succession of William Heffner, 49 La. Ann. 407, 21 South. 905, the will was annulled as invalid on its face, yet the executor was allowed attorney fees for defending the suit to annul and all costs.

In Fenner, Henderson & Fenner v. Succession, 49 La. Ann. 606, 21 South. 768, the court emphasized the duty of the executor to defend the validity of the will of the deceased, and for that purpose to employ counsel, and held that, although the testament was annulled, their fees were due by the succession, and not by the executor personally.

Hence it cannot be doubted that in the instant case the succession is responsible for the fees of the attorneys employed in the mortuary proceedings and in the suit to annul the will, and that the executor is not personally responsible for the same.

It is therefore ordered, adjudged, and decreed that the writ of review be dismissed as to the claim of executor's commissions, and it is further ordered and decreed that the second judgment rendered by the Court of Appeal herein be annulled, avoided, and reversed, and that the first judgment rendered by said court be reinstated and made the judgment of this court; the costs of these proceedings to be paid by the opponent.