55 So.2d 258 (1950)
CALDWELL
v.
CALDWELL et al.
No. 7521.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1950.
On Rehearing April 27, 1951.
On Second Application for Rehearing June 29, 1951.
On Second Rehearing November 30, 1951.
*259 Browne, Browne & Bodenheimer, Shreveport, for appellants.
Goff, Goff & Caskey, Arcadia, for appellee.
KENNON, Judge.
In this suit Billey Burk Caldwell, an emancipated minor above the age of eighteen years, claims compensation against his father, who operated a concrete products manufacturing plant in the town of Saline, Louisiana. The codefendant is the compensation insurance carrier. In his original and supplemental petitions, plaintiff set forth his employment as a helper in the concrete manufacturing plant owned by his father, with weekly wages of $35. He further alleged that on the morning of December 29, 1947, he had been engaged in the operation of making concrete pipe on his employer's premises; that, having poured concrete into forms to set, there was necessarily a wait of several hours, during which time the materials would harden before same could be removed from the forms; that while so waiting, plaintiff was instructed by his employer to drive a tractor with trailer loaded with firewood from employer's plant and to unload same at his employer's home and drive the tractor and trailer back to the plant after he had eaten his lunch; that he obeyed these instructions by driving the tractor and trailer to employer's home; that he unloaded the firewood, ate his lunch, and while returning to work on the tractor, the shoulder of the highway caved in, causing the tractor to turn over, resulting in the crushing and mangling, and subsequent loss, of his left leg.
After an exception of vagueness had been overruled, defendants in answer denied plaintiff's employment; denied that manufacturing operations were conducted on the day of the accident; set forth that the injury occurred while petitioner was returning to work after eating lunch at his own home and after completing a mission that had no relation to his employer's business.
From a judgment awarding plaintiff compensation at $20 a week for four hundred weeks, defendants prosecute the present appeal.
Defendants contend in brief that plaintiff did not establish that he was receiving, at the time of the injury, a stated weekly wage, and therefore his employment was not covered by the policy. The testimony of plaintiff and of D. B. Caldwell, his father, was that during the first few months the policy was in force, no definite wage for plaintiff had been agreed upon and that D. B. Caldwell advanced plaintiff money from time to time, but that there was a definite agreement made between them some weeks before the accident whereby plaintiff was to receive $35 per week as wages, together with board and transportation. Mr. H. E. Enloe testified that he was present in a cafe in the town of Saline in which the parties were seated at the time of the agreement whereby father and son made the definite arrangement for plaintiff's wages to be fixed at $35 per week. Plaintiff testified that the duties he performed were well worth $50 per week. D. B. Caldwell testified that his reason for wanting to put his son on a fixed salary was that his son was spending too much money and that the monies drawn by his son amounted to more than the regular weekly wage agreed upon.
Considering the son's age, the tendency of youth to spend, and the relatively low value of the dollar, we don't doubt that young Caldwell did draw from his father $35 a week or more during the months covered by the policy and was so doing at the time of his injury.
Although we do not find that plaintiff has established that he was receiving a stated wage of $35 a week prior to the happening of the accident, we do find that he was an active agent and helper of his father in the concrete manufacturing business covered by the policy of insurance, and that *260 the remuneration received by him amounted to $35 a week or more, and that the services performed by him were worth in excess of $35 per week.
In April, 1947, defendant D. B. Caldwell, was issued a standard workmen's compensation and employer's liability policy by his codefendant in the present suit. The expiration date was April 1, 1948; consequently, this policy was in full force and effect at the time plaintiff received his injury. An estimate was made of the total annual wages to be paid by the employer during the policy period to the covered employees, and D. B. Caldwell paid $100 as a deposit on the estimated premium. By its terms the policy classified defendant's operations as "Concrete Products Mfg. shop or yard work onlyincluding Drivers, Chauffeurs and their Helpers." The description of the employees covered was set forth to "include all persons employed in the service of this Employer in connection with the business operations above described to whom remuneration of any nature in consideration of service is paid, allowed or due." (Emphasis by the Court).
In view of the facts shown and the above provisions of the policy, we find that the insurer is responsible for any injuries received by plaintiff while engaged in the activities covered by the policy.
The wide scope of activities covered by the policy is shown by the following statement in the policy relative to premium payments: "The premium is based upon the entire remuneration earned, during the Policy Period, by all employees of this Employer engaged in the business operation described in said Declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relation thereto; excepting however the remuneration of the President, any Vice-President, Secretary or Treasurer of this Employer, if a corporation, but including the remuneration of any one or more of such designated officers who are actually performing such duties as are ordinarily undertaken by a superintendent, foreman or workman." (Emphasis by the Court).
The tractor which plaintiff was driving at the time of his injury was one used by his employer at the concrete manufacturing plant covered by the policy of insurance. Its use included the transport of plant supplies used in the manufacture of the blocks, pipe and other concrete products, and in moving the finished products from the moulds or forms to the storage yard, and in delivering these products to local customers.
While there is some dispute as to whether the concrete plant was in operation on the morning of the day on which plaintiff was injured, the testimony justifies the conclusion that plaintiff did perform certain duties of his employment at the concrete plant during the forenoon preceding his injury. At noontime, in accordance with his employer's instructions, he drove a tractor with a trailer load of firewood, which had been cut by an electric cut-off saw operated by his employer-father on the same premises as the concrete plant, to the father's premises, and after unloading the wood, he was driving the tractor back towards the concrete plant for the purpose of resuming work there, when the accident occurred.
Plaintiff, while he lived in the home of his father where the firewood was carried, was a minor and it was not his responsibility to provide fuel or other living necessities or conveniences. Therefore, his carrying the firewood from the manufacturing plant site to his father's home could not be considered a turning aside from his employment with his father to perform an act in furtherance of his own business or desires. When he drove his father's tractor to his father's house for the purpose of delivering firewood for use there, all in accordance with instructions from D. B. Caldwell, he was, as between himself and his father, still engaged in his employer's business.
Conceding, for the sake of argument, that the carrying of the firewood to the home of his employer was a digression from the business as covered by the insurance policy, it is nevertheless true that when he completed the business of delivering the firewood and started on the return *261 trip from the house to the plant for the obvious purpose of returning the tractor to the concrete yard, he reentered his employment with the concrete manufacturing plant.
The cut-off saw with which the firewood was prepared was operated at the site of the concrete works. The language of the policy defining the coverage states that the policy applies to injuries sustained by all operations not only necessary to but "incident or appurtenant (to the business described) thereto, or connected therewith." In view of the rule of law that an insurer issuing a policy is held liable to the full extent of the reasonable meaning of the language defining such liability, defendant insurer would be liable even though the plaintiff had not, on the day in question, engaged in some of the activities incident to the actual concrete manufacturing operations.
To sum up, we find that the tractor in which plaintiff was riding when injured was used principally by defendant, D. B. Caldwell, in connection with the concrete products manufacturing business covered by the policy issued by his co-defendant; that plaintiff, during the forenoon preceding the accident, had performed at the concrete plant site some duties in connection with the concrete manufacturing operations; that it was in accordance with the instructions of D. B. Caldwell that plaintiff had driven the tractor with its trailer load of firewood to the D. B. Caldwell home, where he had delivered the wood and eaten his lunch, and that the fateful return trip was in accordance with the instructions of his father-employer, and at the time of his injury, he was returning the tractor to the concrete yard where he expected to perform other duties of his employment there.
Our conclusion is that, at the time of the loss of his limb, plaintiff was an employee of D. B. Caldwell within the coverage of the workmen's compensation act, and engaged in activities covered by the policy, and he was drawing remuneration or wages of not less than $35 per week.
We next consider whether plaintiff is entitled to the one hundred and seventy-five weeks compensation asked for in his original petition or to the four hundred weeks prayed for in the supplementary one.
The cases cited by counsel in which four hundred weeks compensation was awarded partially disabled workmen are those relative to manual laborers having no other way of earning a living other than by hard work. The record shows that plaintiff is an intelligent young man and there is no reason to believe that he will not be able to earn a living in spite of the physical handicap incident to the unfortunate and regrettable loss of his left leg. He has not met the burden of showing that he is entitled to more than the one hundred seventy-five weeks compensation provided for the loss of a limb.
For the reasons assigned, the judgment appealed from is amended by reducing the period of disability to one hundred seventy-five weeks, and as amended, same is affirmed. Costs of appeal to be paid by plaintiff; other costs by defendants.
HARDY, J., dissents and assigns written reasons.
HARDY, Judge (dissenting).
It is my opinion that the majority of the Court is in error in three express particulars. First, in its finding that plaintiff was receiving a stated weekly wage at the time of the injury; second, in the finding that plaintiff was engaged at the time of the injury in a matter connected with the business operations of his so-called employer, and, third, in construing the policy provisions as covering the operation in which plaintiff was engaged at the time of the injury.
Even the language of the majority opinion in this case militates against the finding that plaintiff was working for a fixed and established wage, as observe the following extract:
"* * * we don't doubt that young Caldwell did draw from his father $35 a week or more during the months covered by the policy and was so doing at the time of his injury.
*262 "Although we do not find that plaintiff has established that he was receiving a stated wage of $35 a week prior to the happening of the accident, we do find that he was an active agent and helper of his father. * * *"
It is noted that the opinion repeatedly refers to the relationship as that of father and son and not that of employer-employee. We quite agree with the evaluation of the facts in this case as establishing the former relationship, and for this very reason cannot accord with the ultimate finding which awards judgment against an insurer predicated upon an employer-employee relationship. And since the opinion has frankly and unequivocally stated that the majority of the Court did not find as a fact that a fixed wage had been established, I am at a loss to appreciate how the claim can be brought within the coverage of the policy.
As to the second point, it seems plain to me that at the time of the accident plaintiff was returning from an errand that had been undertaken purely and simply in the personal family interest and not by any stretch of the imagination in connection with any alleged employment.
Finally, I cannot consent to the construction of the policy provision, specifically limiting coverage to the business operations of the employer, as including the hauling of firewood for family use. Surely if such a mission leads to a conclusion that it is "incidental or appurtenant" to the operation of conducting a concrete manufacturing plant, then a compensation insurer cannot possibly escape liability for any injury no matter where, or when, or how it may occur.
For these reasons I respectfully dissent.

On Rehearing.
TALIAFERRO, Judge.
Rehearing herein was granted solely on application of defendants, appellants. Errors in the judgment are assigned, as follows, viz:
(1) In holding that plaintiff was being paid the equivalent of a weekly wage at the time of the injury; (2) That he was engaged when injured, in a matter connected with the business operation of his socalled employer; (3) That the policy provisions covered the operations in which plaintiff was engaged when the accident occurred; (4) That the plant of the alleged employer was operating the day of the accident; (5) That plaintiff was covered by the policy in view of the fact he was not reported by the employer and no premium was paid for his protection.
Plaintiff, appellee, has not complained of the judgment through filing of application for rehearing, and the logical conclusion irresistibly arises that the judgment, as regards the holding that plaintiff was not, in the contemplation of law, in the employment of his father when injured, and that compensation for the loss of a leg only is due, if any, is final insofar as plaintiff is concerned. The rehearing was granted only to give further consideration to the earnest plea therefor filed by the appellants. Insofar as not complained of, of course, the rehearing does not extend.
With respect to rehearings, the Code of Practice, Article 912, provides: "A party dissatisfied with the judgment may apply to the court for a new hearing in the cause, and for this purpose shall present a petition * * *."
In view of the unambiguous language of this article, the implication follows that if a litigant whose contentions, in whole or part, have been overruled, abstains from timely application for a rehearing on the questions involved, he is satisfied with the justice of the decree and the grounds upon which it was based. He cannot thereafter be heard to urge on rehearing, procured by his opponent, questions foreclosed by his own failure to ask for a rehearing.
The primary question tendered and now to be considered is simply this: Since it has been held that the alleged contract of hiring has not been proven, do the facts of business and filial relationship between plaintiff and his father, the alleged employer, warrant the holding that such relationship brings the case within the coverage of the policy? If not, of course, that will automatically end the suit.
*263 Further study of the policy provisions, in the light of the facts, has led us to the conclusion that coverage does not extend to such facts.
Because a father intermittently and irregularly advances cash to his minor son for services rendered by him, does not create contractual employment, nor a legal status equivalent thereto. Under the law, the son, so long as minority prevails, owes to his father the duty of rendering service to him without the right to demand compensation therefor. Civil Code, Article 216.
The Workmen's Compensation Law, LSA-RS 23:1021 et seq., applies only to persons "performing services arising out of and incidental to his employment", etc. Employment means, of course, an engagement or contract to perform or render some sort of service to the one to whom such service is due. Injuries sustained by the person thus bound, and not of a character otherwise that warrants their exclusion from the purview of the Act, are compensable.
The policy sued on, at its inception, reads:
"Commercial Standard Insurance CompanyDoes Hereby Agree with this Employer, * * * as respects personal injuries sustained by employees, * * * as follows:
"One (a) To Pay Promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due", * * *.
Later in the policy contract specific reference is made to Act No. 20 of 1914, as amended, as being the law under which the policy was issued and the rights of all persons measured. And it is made clear in that instrument that coverage was intended to extend to cases only that were enforceable under this law's provisions. And we have found, and hereby hold, that the facts of this case do not bring it within the operative effect of said Act.
application for rehearing.
These conclusions obviate necessity of ruling on other questions tendered by the
Therefore, for the reasons herein assigned, the judgment from which appealed is annulled and reversed. Plaintiff's suit is dismissed and his demand rejected at his cost.
KENNON, J. dissents, adhering to the original opinion.
On Second Application for Rehearing.
PER CURIAM.
This application was filed by the plaintiff, appellee. The first application for rehearing was filed by the defendants, appellants. The rehearing was granted, of course, solely upon this application, and in reconsidering the case on its merits we held that as appellee had not complained of the judgment rendered by this Court, partly favorable to him and partly against him, only issues tendered by appellants' application were before us on the rehearing. Appellee complains strenuously of this ruling and now argues that as the rehearing was granted without restriction or limitation, the case in its entirety was again before us after being re-argued and resubmitted. We do not believe this position well founded, as our minutes properly disclose that the rehearing was granted solely upon the application of the appellants, beyond which we had no right to go. The jurisprudence of this state, we feel sure, supports this view of the matter. See: Succession of Morere, 117 La. 543, 42 So. 132; Lahn & Company v. Carr, 120 La. 797, 45 So. 707; Union Homestead Association v. Montegut, 168 La. 369, 122 So. 68.
Appellee also complains of our ruling that it was not expressly held in our first judgment that the relationship of employer and employee between the father and son at time of the accident, existed; contending that we did so. In this position he has support. The judgment as regards the question of a contract of employment between the parties is to some degree equivocal.
While the right to apply for a second rehearing was not given in our judgment, after the first rehearing, such privilege reposes in appellee as a matter of right. Dumaine & Company v. Gay, Sullivan & Company, Inc., 194 La. 777, 194 So. 779.
*264 The situation in this case is such that to promote the ends of justice and in keeping with the age-old principle that every man is entitled to his day in court, a restricted rehearing should be granted. Therefore, for the reasons assigned a rehearing in this case is granted without oral argument, as regards the following issues therein, to-wit:
1. Whether or not the relationship between Billey Burk Caldwell, plaintiff, and his father, D. B. Caldwell, at time of the accident, was that of employer and employee; and
2. Whether or not at the time of the accident, if such relationship existed, plaintiff was performing services arising out of and incidental to his employment in the course of his employer's business.
Except in the respects as hereinabove granted, the application for rehearing filed by plaintiff, appellee, is denied.
GLADNEY, Judge Ad Hoc.
This, a second rehearing granted herein, was by our own order limited to a consideration of the following issues:
1. Whether or not the relationship between Billey Burk Caldwell, plaintiff, and his father, D. B. Caldwell, at time of the accident, was that of employer and employee; and
2. Whether or not at the time of the accident, if such relationship existed, plaintiff was performing services arising out of and incidental to his employment in the course of his employer's business.
In our first judgment, though holding the relationship of employer and employee between the father and son at the time of the accident existed, this conclusion was qualified by our finding that plaintiff had not established that he was receiving a stated wage prior to the happening of the accident.
On first rehearing, we denied that the facts of business and filial relationship between plaintiff and his father, the alleged employer, warranted the holding that such relationship brought the case within the insurance policy sued upon, and that because a father intermittently and irregularly advances cash to his minor son for services rendered by him, this does not create contractual employment, nor a legal status equivalent thereto.
We have not stated, nor do we here hold, that a contract of hiring between a father and his minor son cannot exist under circumstances that would bring the employment under the provisions of the workmen's compensation act. The engagement, however, must create a valid contract of employment in the business affected by the act. We think in determining if plaintiff was so employed the filial relationship and the incidents which we may reasonably assume will flow from the effects of the injury which befell plaintiff are but elements to be appraised in a consideration of the existence of a valid contract of employment. A proper decision of the issue calls for a careful review of all the evidence presented.
Appellee argues that the contract of employment was conclusively established by the testimony, and quotes from the testimony of the following witnesses:
Billey Burk Caldwell:
"Q. What was your weekly wage? A. $35 a week.
"Q. And what did you all agree on as a weekly wage at that time? A. $35 a week.
"Q. How were you paid? A. $35 at the end of each week.
"Q. Check or cash? A. Cash.
"Q. Paid by your father? A. Yes.
"Q. Billey, when you and your father made this agreement, who set the amount, your father or you? A. He set the amount.
"Q. Did you pay him anything for food or lodging? A. That was included with the $35.
"Q. Food and lodging and the $35 and transportation? A. And transportation.
"Q. That was specified between the two of you? A. That is right."
Harry E. Enloe:
"Q. Do you remember the occasion of a discussion between D. B. Caldwell and Billey Burk Caldwell relative to the employment of Billey Burk Caldwell? A. Yes, sir.
*265 "Q. Where was that discussion had? A. On the stool in the cafe.
"Q. You were present there with them at that time? A. Yes, sir.
"Q. Do you remember what the discussion was? A. Well, Billey Burk spent right smart money and Mr. Caldwell had to get him on a quota of so much to spend, so he asked Billey, sitting there, if he would work for $35 a week and his board and his washing and his transportation so he could keep up with how much he spent and Billey waited a little bit and he said, `that would be all right.' He tried anyhow.
"Q. They agreed on that basis there at that time? A. Yes.
"Q. You were present and heard the agreement? A. Yes, sir."
D. B. Caldwell:
"O. What wages were you paying him (Billey)? A. $35 a week straight time, board and transportation to and from lunch or work.
"Q. Did you have an agreement with him about the rate of pay and so forth? A. Yes sir.
"Q. Where was that agreement had? A. Enloe's Cafe.
"Q. Who was present there? A. Mr. H. E. Enloe and Billey and myself.
"Q. Just what was the agreement you all came to on that date? A. Well, Billey and I have previously discussed the condition in whichhis future, in other words schooling or the plant, or something he would like within himself and I just decided it was best to get it on a more businesslike basis and agreed with him on $35 a week and, of course, his board, laundry and means of transportation to and from work.
"Q. When you and Billey had this agreement about his wages, and so forth, you agreed to pay him $35 a week, furnishing his board and transportation to and from your home to the plant? A. Yes, sir.
"Q. That was your agreement? A. Yes, sir.
"Q. About when was that agreement made? A. That agreement was made December 15th.
"Q. Of what year? A. 1947."
Other supporting evidence produced was a timebook kept by D. B. Caldwell listing payments to plaintiff of $87.50 for the period December 15-29, 1947.
Without contradiction, and if credible, it could be stated that plaintiff has sustained his point, but appellant challenges this evidence as not being trustworthy and has directed our attention to irregularities in the testimony of plaintiff and his father. Also filed in the record are certain exhibits mainly offered for the purpose of impeaching D. B. Caldwell. Inconsistencies found in the testimony adduced by plaintiff and his father are set forth below.
Billey Burk Caldwell, in response to questioning on three different occasions, stated his regular employment pay commenced a month or two before the accident. When later called to the witness stand, after a recess of court, he testified the agreement was made on December 15, 1947, and then recalled the number of payments of $35 he had received. He explained this difference in his testimony by stating his father had told him the date during the recess. Again, it appears plaintiff, on August 30, 1948, gave a signed statement narrating he "had been hauling wood out to the farm and was on the way back to the plant. I was taking firewood out to the farm to be used for heating purposesmy father had sent me out to the farm. Had been working at the plant we had cut some slabs at the plant to use for firewood and I was hauling the wood out to the house * * *." First, he testified upon cross-examination that on the morning of December 29th, he was using the saw and tractor to cut slabs for firewood besides making tile, but afterwards plaintiff denied the wood was cut at the plant on the day of the accident, only to say on redirect examination he didn't exactly know if he had cut any wood at the plant on that day. Contrary to other evidence is his testimony concerning the employment of other labor during the three month period of October, November and December, 1947, during which time the payroll is said to have totaled $87.50. His testimony was that during November and December, 1947, another worker, whose name he did not remember, *266 was working at the plant for a weekly wage of $35. He also stated the plant was in continuous operation during said quarterly period, during which time plaintiff was drawing $35 a week as was the other man, and every once in awhile a Negro helped stack blocks and he was being paid.
D. B. Caldwell, the father, said the only record showing the employment of Billey Burk Caldwell from December 15, 1947 through December 29, 1947, was the timebook. He could not remember whether other workers were used during the final quarter of 1947 or not, saying "maybe so" and "maybe no." The timebook contains no employee entries during October, November and December, 1947 except those relating to Billey Burk Caldwell. A payroll report bearing date January 28, 1948, prepared by the local agents of the insurer, Daniel, Bryan & Turner of Arcadia, Louisiana, indicated above the signature of D. B. Caldwell that there were no operations at the plant from October 1, 1947 to December 31, 1947. Caldwell testified that before signing the above, the representative of Daniel, Bryan & Turner promised to furnish an amended report to show a period payroll of $87.50. By a letter to this firm, dated January 31, 1948, he wrote that the prior report which had been forwarded to him did not show operations during this period, whereas he had operations during this time. Though this letter would seem to be in his favor, before it was produced, he denied sending it. An amended report to show a quarterly payroll of $87.50 was not prepared until May 5, 1948.
In direct conflict with the testimony of D. B. Caldwell, is that of E. M. Cunningham, auditor for defendant insurer, who identified a document executed on April 23, 1948 in his handwriting bearing the signature of D. B. Caldwell on the front side. The reverse contains a statement which he testified was written down as the information was given him by Mr. Caldwell. It reads in part: "Dec. 87.50 Plant closed all quarter except for work done by owner & sonson draws no salary."
Cunningham further testified that all notations and pencil marks were made by him at one and the same time, while sitting with Mr. Caldwell in a cafe and were checked by him at the time. Also he related that Caldwell told him Billey was not on a regular salary but had received spending money for helping him at the plant and on the farm, and he quotes Caldwell as saying the payroll for the last quarter had dropped to practically nothing as the blocks were not selling. Cunningham testified he prepared the audit of the payroll figures from the timebook filed as evidence, and that on the date of the audit, April 23, 1948, there were no entries in such book relating to a salary for Billey Burk Caldwell.
Other than the above referred to witnesses, only one other, Webbie Driggers, was called to the stand. He corroborated the testimony of D. B. Caldwell as to the latter's request for an amended payroll report. He reported that he saw a white man and a colored man working at the plant almost every day during the last three months of 1947.
We must determine from the above evidence whether the asserted compensation agreement of December 15th arrived at in Enloe's cafe between father and son represented an intent on the part of the father to make his son an employee of the plant, or was it an arrangement by the father simply to be relieved of irregular demands for money by substitution of a fixed weekly allowance. Enloe said the reason was so that Mr. Caldwell could keep up with how much Billey spent. The father said the arrangement came when he "just decided to get it on a more businesslike basis and agreed with him on $35 a week and, of course, his board, laundry and means of transportation to work."
If Billey was a regular employee of the plant during December, and his total wages were $87.50, as entered in the timebook, there is no way to harmonize this fact with the testimony of Billey and Mr. Driggers that there were other employees during the quarter period, for there is no evidence of payment over this period to other employees unless it be included in this sum, the total payroll for the period. The testimony of Mr. Cunningham that D. B. Caldwell told him Billey was not on salary is, of course, in contradiction of an employee status.
*267 After a most careful consideration, we have arrived at the conclusion that plaintiff has not established to our satisfaction the existence of an employer-employee relationship within the purview of the act.
Plaintiff in compensation case must prove his claim, and speculation and probabilities are not sufficient to justify a decree in absence of plaintiff's establishment of his claim with reasonable certainty. York v. E. I. DuPont De Nemours & Company, La.App., 37 So.2d 68. Vega v. Higgins Industries, Inc., et al., La.App., 23 So.2d 661. Brown v. R. P. Farnsworth & Company, Inc., et al., La.App., 17 So.2d 48. Spears v. Brown Paper Mill Company, Inc., La.App., 9 So.2d 332.
In view of our holding herein that plaintiff has not shown by a preponderance of the evidence the relationship between Billey Burk Caldwell and D. B. Caldwell, at the time of the accident, was that of employer and employee, there is no reason to pass upon the remaining issue.
For the reasons assigned, the judgment of the District Court is reversed and set aside and plaintiff's suit dismissed at his costs.
KENNON, J., not participating.